# Elkhorn Coal Corporation v. Bumpass' Administrator.

### (Decided June 23, 1922.)

## Appeal from Letcher Circuit Court.

1.  Master and Servant—Defect in Mine—Negligence—Notice.—It is negligence for those in authority in the operation of a mine to leave a known dangerous place therein without putting up a

notice · of some character, or leaving a signal of some kind to warn others from that place; especially, where the rules of the company require such action.

2.   Master and Servant—Defective Condition of Roof of Mine—Negligence.—After the dangerous condition of the roof in a coal mining room had been called to the attention of certain officials in authority, it was negligence for them not to warn, in person, an employe seen by them to be going in the direction of that room, and only a short distance from it.

3.   Master and Servant—Defective Condition of Roof of Mine—Instructions.—In an action where there is no defense in the answer alleging the obviously dangerous condition of the roof which fell upon and killed decedent, but, on the contrary, there is a denial that the roof was in a dangerous or unsafe condition, defendant was not entitled to have embraced in the instructions the idea that if the roof was in such an obviously dangerous condition that the knowledge of such danger must be imputed to the plaintiff, so as to defeat his recovery.

4.   Master and Servant—Instructions.—The instructions are analyzed and held to have, in effect, submitted that issue.

5.   Appeal and Error—Argument of Counsel.—Improper argument of counsel for plaintiff intended to arouse the sympathy of the jury is held not to be prejudicial where the court promptly sustained an objection to the argument, and directed the jury not to consider it, and thereafter, a second time, in effect, admonished the jury not to consider the same in making up their verdict.

ALLIE W. YOUNG, E. C. O'REAR, W. G. DEARING and FIELDS & FIELDS for appellant.

FAULKNER & FAULKNER, DAVID HAYS and COX & GRAYOT for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

This is an action by the personal representative of William T. Bumpass, deceased, against appellant coal corporation and its mine foreman, H. D. Jones, for the death of Bumpass in the company's coal mine because of their alleged negligence.

On a trial the jury returned a verdict for the plaintiff for seven thousand dollars, upon which a judgment was entered and the defendants have appealed.

Bumpass, at the time of his death, was about twenty-seven years of age and had a wife and two children. He had been at work in different capacities in coal mines for some time but had never acted in the capacity of pumper until three or four days before his death.

The company operated in connection with its mine an electrical pumping station, and it had connected with that pumping station certain small pipes which were run to the different rooms where the coal was mined, and the duty of pumper was to visit these several rooms as many as three or four times a day each, and carry with him a few feet of hose which could be attached to the small pipes near the entrance to the room, and then place the hose in the water therein and pump it out by suction so as that such places might be kept dry and free from water and facilitate the work of those getting out the coal. The evidence is that there were five or six rooms or places in the particular mine each of which the pumper was required to visit four or five times a day in the discharge of his duties.

The pumper some four or five minutes before his death was seen going in the direction of the room where he was killed, and only a short distance therefrom, dragging his hose along with him and with his miner's light on his cap.

Three grounds for reversal are relied upon, (1) that the court erred in not sustaining appellant's motion for a directed verdict, (2) that the first instruction given by the court over appellant's objection was erroneous because it was incomplete and did not submit to the jury the question whether the dangerous condition of the roof was so obvious that decedent in the exercise of ordinary care for his own safety should have known of its condition, and (3) improper argument by plaintiff's counsel.

The evidence plainly justified the submission of the case to the jury. In substance it showed that some thirty to forty-five minutes before the roof fell on and killed Bumpass its dangerous condition had been called to the attention of at least one, and probably two, of the mine employes superior in authority to Bumpass, and they with other employes had examined the roof and all those present had been warned to stay out of that room because of its dangerous condition. There is evidence which justified the jury in believing that appellant Jones, the mine boss, was present at that time and it is admitted that another superior in authority, Doniphan, was present and warned all the employes present. The evidence further unmistakably shows that all of these employes left this dangerous place without putting up any notice of any character, or leaving any signal of any kind to warn others from entering that room, although the rules of

the company required them upon discovery of any dangerous condition of the roof, before leaving the place to put some plain warning across the entrance to warn others against entering the dangerous place.

After these employes had this dangerous place pointed out to them and after they had discussed it among themselves and after all of the workmen present had been warned about it, they went a short distance away from there, some fifty or sixty feet, and at least some of them stood or sat there talking or leisurely discussing other things. While they were so engaged the decedent came from another part of the mine and although seen passing within a few feet of them, with his miner's light in his cap, going in the direction of the dangerous room, was given no warning of that danger. The evidence shows that decedent must have passed within a very few feet of where they were sitting and that there was no other way he could have gotten to that room; and it further shows that when the slate was heard by them to fall some one of those present immediately said "That must have got that pumper" or words to that effect. There is evidence from which the jury might well have believed that at least two of the persons who were present at that time, a short distance from this room and who were members of the party near which decedent had to pass, were superior in authority to him and that it was their duty to have warned him of the danger. Not only did they not warn him in person, as was their plain duty to do, but it was culpable negligence for them to have left this dangerous place without putting up some sort of notice or warning, and particularly in view of the rule of the company requiring them to do so.

It is not necessary to go further into the evidence, for it must be apparent from this short statement of it that the action of the court in overruling the motion for a directed verdict was eminently proper. The court in its instruction number one, complained of, directed the jury that if they should believe that the unsafe or dangerous condition of the roof was known to the defendant company or its employes superior in authority to the decedent, or that such condition could have been known to them by the exercise of ordinary care, and that the condition of the roof was not at the time known to the decedent they should find a verdict for the plaintiff. The complaint of this instruction is, and the defendants offered one cover-

ing that view, that it did not say to the jury if the dangerous condition was so obvious that decedent in the exercise of ordinary care in the discharge of his duties should have known of its condition, there should be a verdict for defendant. The instruction as given based the plaintiff's right to recover upon his want of knowledge of the dangerous condition, but the complaint is it did not embrace the idea that still he could not recover if the danger was so obvious that one of ordinary intelligence and in the exercise of ordinary care for his own safety should have known of the dangerous condition, although no duty of inspection rested upon him. In other words, the contention is that even though decedent owed no duty of inspection of the roof, if its dangerous condition was so obvious and patent to one of ordinary intelligence that such knowledge may be imputed to him, there can be no recovery.

The first instruction in effect denied a right of recovery to the plaintiff if at the time he knew of the unsafe and dangerous condition of the room, and further requires that he should have been killed while exercising ordinary care for his own safety before he was entitled to recover. In another instruction ordinary care is defined as such care as an ordinarily prudent person would, under similar circumstances, usually exercise for his own safety or the safety of another. Then again, in the instruction on contributory negligence the jury was told that if the plaintiff on that occasion was negligent and his negligence contributed to the injury to such an extent that but for it he would not have been injured, there must be a verdict for the defendant. Again, in an instruction on assumed risk the court told the jury that defendant assumed all the ordinary risks incident to the employment and if they should believe from the evidence his death was caused by the ordinary risks of his employment and not by any negligence of his own, they must still find for the defendant.

The answer of the defendant is in two paragraphs. In the first there is a traverse of the material allegations of the petition, and the second is the ordinary plea of contributory negligence; but in neither paragraph is there any reference whatsoever to any defense growing out of the alleged obviously dangerous condition of the roof of the mine.

On the contrary, it is specifically denied in the answer "That at the time of the injury of the said decedent

the said place where he was required to work was in a highly dangerous or unsafe condition for the performance of the duties required of him.''

We have then a defendant denying in its answer that the roof of its mines where the plaintiff was placed at work was unsafe or dangerous, and yet on the trial, after the evidence has been heard, claiming to be entitled to an instruction saying, in effect, to the jury that if the roof was in an obviously dangerous condition at the time, knowledge of such obvious danger must be imputed to the plaintiff, and he cannot therefore recover.

Plainly the roof could not have been at one and the same time safe and dangerous; surely if defendant elects to rely upon the safe condition of the roof in its pleadings, it would be inconsistent for it to, in the same pleading, say that it was in such an obviously dangerous condition that the knowledge of such danger must be imputed to the plaintiff so as to defeat his recovery.

In other words, the defense which the defendant elected to rely upon, viz., that the roof of the mine was not in an unsafe condition is wholly inconsistent with the idea that it was so obviously dangerous that the knowledge of such danger must be imputed to the plaintiff; and if there had been embraced in the answer both of these allegations, certainly the defendant would have been required to elect which defense he would rely upon, for it is perfectly patent that they both could not be true. A defendant will not be permitted to say in one breath the place of work was safe and therefore the plaintiff cannot recover, and in the next breath say the place of work was so obviously dangerous that such knowledge must be imputed to the plaintiff, and therefore he cannot recover.

But if it be assumed that defendant was entitled to have this question of obvious danger submitted to the jury, has it not been in effect submitted? Under the instructions the jury could not have found for the plaintiff if they believed he knew of the dangerous condition of the roof; they could not have found for him unless they believed he was at the time exercising ordinary care for his own safety; they were expressly instructed in the instruction on contributory negligence that if the decedent's negligence contributed to the injury to such an extent that but for it he would not have been injured, they must find for the defendant; they were likewise instructed in the instruction on assumed risk if the injuries were caused by

the ordinary risks of the employment he had assumed them, and could not, therefore, recover.

The jury by returning a verdict for the plaintiff necessarily found that he did not know of the dangerous conditions of the roof; the evidence tending to show the obvious danger went to the jury, and in passing upon the question whether he knew of such danger, the jury must have and certainly did consider such evidence. If he did not know of the danger, as the jury has found, it necessarily follows that the danger was not so obvious, in the opinion of the jury, as to convince them that he did know of it. He either knew it or he did not know it, and the evidence of its obviousness was properly permitted to go to the jury on that issue, and the submission in the instructions of the obvious danger could have added nothing to the issue submitted.

If the danger was as obvious as appellant would have us believe and the evidence was accepted by the jury, there could have been no finding of fact that he did not know of the danger.

The duty of appellee's intestate as pumper required him to go into the rooms to see whether there was any water in them to interfere with the getting out of the coal, and if there was, to take steps to pump it out; his duty in the several rooms had only to do with the floor, and had no connection whatsoever with the roof. It is only natural that in the prosecution of his duties his attention should be directed to that place where his duty called him, and it is not to be expected he would ordinarily have his attention called to any other part of the room. In looking down and examining the floor with a view to seeing how much water was there, and how it could be pumped out, it is not to be expected that he, while attending to such duties, would observe even an obvious defect in the roof.

It is clear under these circumstances from the nature of his duties decedent owed no duty of inspection of the roof, and owing no such duty, it cannot be assumed in such circumstances he observed any defect or danger in the roof; and owing no duty of inspection of the roof, he had a right to assume the master had placed it in a reasonably safe condition to protect him in the prosecution of his work.

The instructions as a whole under the state of the pleadings fairly submitted all the issues, and it is perfectly plain that if they had embraced the idea contended

for by appellant, the issues submitted would have been in substance the same, and therefore there was no prejudicial error.

Complaint is further made of the argument of counsel during the trial. In the concluding argument counsel for plaintiff used this language:

"I don't believe it is right for this great corporation with its three hundred and two mines somewhere—" at which point counsel for defendant objected and the court sustained the objection, whereupon the attorney for the plaintiff said:

"I will withdraw the argument, but I was only going by the number three hundred and two, but when I heard that number you know of the impression it made upon my mind."

In the evidence it appeared that the injury to the decedent took place in what is called mine number three hundred and two, and it is apparent that counsel assumed from this number that the corporation operating that mine had that many mines, and upon objection he withdrew his statement and we do not see that it could have been in any way prejudicial.

It is likewise complained that further along in his argument the same counsel used these words:

"Gentlemen of the jury, say by your verdict that this man's family shall no longer go hungry—" and at this point defendant's counsel objected, and the court sustained the objection and told the jury not to consider that remark of the attorney, and later on further admonished the jury in making up its verdict not to take into consideration the fact either that the defendant is a corporation and owns a great number of mines, or that the plaintiff was a poor man and in need.

Defendant's counsel upon each occasion when the above quoted statements were made, moved the court to set aside the swearing of the jury and continue the case, which motion was overruled.

The latter statement in the argument of counsel was manifestly intended to arouse the sympathies of the jury, and was in no sense a fair presentation of any issue in the case. But when the court promptly sustained an objection and directed the jury not to consider it, and thereafter again, in effect, admonished the jury not to take such things into the estimate in reaching their verdict, it cannot be said that there was such prejudicial error as to authorize a reversal. It may be always questioned whether

counsel in making unjustifiable arguments to a jury, which elicit from the court adverse rulings and thereby brings to the attention of the jury the unfairness of the argument, do not injure their own clients more than they furnish ground of a complaint to the adversary.

The former opinion is withdrawn, the petition for rehearing is granted and the judgment is affirmed.