### Crab Orchard Distilling Co. v. Commonwealth ex rel. Moore.

February 21, 1947.

As modified on denial of rehearing May 13, 1947.

W. B. Ardery, Judge.

William Marshall Bullitt, Leo T. Wolford, Thomas W. Bullitt and Bullitt & Middleton for appellant.

Smith & Leary and Samuel M. Rosenstein and Henry S. Chesnut for appellee.

OPINION OF THE COURT BY JUDGE LATIMER—Reversing.

The Commonwealth of Kentucky, by and on relation of Ward J. Oates, Commissioner of Revenue, insti-

tuted this action in the Franklin Circuit Court to recover of the Crab Orchard Distillery Company the annual $500 distillers license fees, together with interest and penalty, for the years 1938 to 1942, inclusive, as provided in KRS 241.010, 243.010, 243.020, 243.030, and 243.120. By later amendment the years 1943 and 1944 were included.

Defendant, Crab Orchard, by answer denied that it was ever a distiller manufacturing distilled spirits, or that it is liable for the $500 license fees, together with interest and penalty, for the periods as set out in plaintiff's petition, but that National Distillers were the sole owners of the distilleries on which the license fees are sought to be collected, and also the sole owners of the trade name "Crab Orchard," and the Crab Orchard Distillery Company; and that as such owner and distiller it had paid all license fees and tax on manufactured whiskey.

Proof was taken and the cause submitted. Refusing to give the defendant's requested findings of facts and conclusions of law, the court gave its own and entered judgment in favor of plaintiff against Crab Orchard for five years licenses as follows:

"I. For $2,500; with 1% interest per month on

    (1) $500 from July 1, 1938
    (2) $500 from July 1, 1939
    (3) $500 from July 1, 1940
    (4) $500 from July 1, 1941
    (5) $500 from July 1, 1942

"II. For a penalty of 20% of the amounts so adjudged in I."

Defendant, Crab Orchard Distillery Company, appeals.

Appellee contends that Crab Orchard, by facts alleged in its answer, admitted all the elements essential to the case for the Commonwealth, and on the basis of the facts as admitted, the Court properly invoked the case of Logan, Auditor, v. Greenbrier Distilling Co., 286 Ky. 319, 150 S. W. 673, in finding for the Commonwealth.

Appellee further insists that the statements of fact contained in appellant's pleading are judicial admissions

and that Crab Orchard is bound by those statements, and that it will not be permitted to disprove or contradict what it has already admitted. In support of this position numerous cases are cited wherein it is held generally that allegations in pleadings may not be contradicted or disproved. See Sutherland v. Davis, 286 Ky. 743, 151 S. W. 2d 1021; Collingsworth v. City of Catlettsburg, 236 Ky. 194, 32 S. W. 2d 982; Sievers v. Martin, 82 S. W. 631, 26 Ky. Law Rep. 904; Swain v. Harmount & Woolf Tie Co., 226 Ky. 823, 11 S. W. 2d 940; Elkhorn Coal Corp. v. Bumpass' Adm'r, 195 Ky. 453, 243 S. W. 32.

Appellee specifically directs attention to Paragraph 2 of Crab Orchard's answer, wherein by its own statement, positive and definite facts are asserted which establish conclusively that it was engaged in the business of a distiller of whiskey within the meaning of the statutes above referred to.

The particular allegations referred to are:

(1) "The distillery plant registered as Distillery No. 3 and the distillery plant registered as Distillery No. 19, in the office of the Collector of Internal Revenue of the United States at Louisville, Kentucky, both of which plants are located in Jefferson County, Kentucky, belonged to AMS prior to January 1, 1936, at which time title to such distillery plants was transferred by AMS to its parent company, National, and National has since been, and now is, the owner thereof."

(2) "From time to time since March 17, 1934, such Distilleries No. 3 and No. 19 have been operated by AMS and National in the name of Crab Orchard for the manufacture of whiskey under the whiskey brand or tradename of 'Crab Orchard' as the mere agency or instrumentality of AMS (prior to January 1, 1936) and National (after January 1, 1936), under contracts between such parent companies and Crab Orchard.

"Such contracts provide that National formally leased to Crab Orchard (and to the other wholly owned 'brand' subsidiaries) the distillery plant, but that National is to supply all grain and other materials needed for the manufacture and to pay all costs of labor and other expenses incurred in the manufacture; that the

whiskey is to be stored in National's Internal Revenue Bonded Warehouse; that Crab Orchard shall have no title to or any right or interest in any of the materials or the whiskey, or any product produced therefrom, but that said whiskey and products shall at all times belong to National; that the formulae according to which the whiskey is manufactured shall belong to National; that National will supply superintendence and all labor needed for the manufacture of the whiskey and will save Crab Orchard harmless from any loss or liability, arising therefrom.''

(3) ''The procedure of executing a formal lease to the wholly owned 'brand' subsidiary has been in effect for many years, has become an established custom of long standing in the trade, is recognized by the Internal Revenue Department of the United States and by the State Tax Commission and Department of Revenue of Kentucky, and is for the sole purpose of retaining the names of the valuable whiskey brands and of preventing any use or infringement thereof by other persons and for the purpose of giving to the Federal Government a lien upon the whiskey and plant for the payment of any internal revenue tax imposed upon the whiskey manufactured in the names of such 'brand' subsidiary companies.''

Despite all that is said by appellee concerning the above allegations, nowhere in the above is there an allegation that Crab Orchard owned the distillery, but that the distilleries were operated in the name of Crab Orchard for the manufacture of the product under the tradename of ''Crab Orchard.'' It also shows the reason for adopting the procedure of executing a formal lease by and between the real owner and Crab Orchard.

The proof as taken, rather than being contradictory of the statements contained in the above allegations, is really in support thereof. We cannot, therefore, agree with the appellee in its contention.

Numerous points are set out and discussed by the appellant, in which it is claimed that the court erred in its findings of fact and law. We deem it unnecessary to discuss all of these points in view of our finding below. The chief question presented here is whether or not Crab Orchard Company was a distiller engaged in

the manufacture of distilled spirits as provided in KRS 241.010(15, 16). If so, the court below properly found for the Commonwealth. This leads us then to a consideration of the facts.

In 1934 the Crab Orchard Distillery Company was incorporated under the laws of Maryland by the American Medicinal Spirits Company, who owned the Crab Orchard Brand. AMSC became the sole owner of the 10 shares of capital stock. AMSC incorporated in order to prevent any one else organizing a company with the brand name "Crab Orchard" in the corporate name.

Under lease agreement for fictional purposes, as stated above, distillery No. 3 was leased to Crab Orchard, which lease expired June 30, 1940. On July 1, 1940, and thereafter, the lease covered distillery No. 19. Thus, it will be seen that the license fees sought to be collected were on distillery No. 3 prior to July 1, 1940, and thereafter on distillery No. 19.

National Distillers alone owned the "Crab Orchard" brand, which was registered in its name at the United States Patent Office. It owned, clear, free, and unencumbered, the fee-simple title to Nos. 3 and 19, together with the warehouses, bottling houses, distilling apparatus, and all other equipment connected therewith. It, alone. employed and discharged every person engaged in connection with Nos. 3 and 19, and directed the manufacture of all whiskey at the two plants. It furnished all labor, materials and superintendence in the manufacture of all distilled spirits at these plants. It, alone, both physically and financially distilled and manufactured all of the "Crab Orchard" brand of whiskey. It removed all the "Crab Orchard" whiskey made at these distilleries and trucked it in its own trucks to its own warehouses and bottling houses, and paid all the taxes thereon. It sold all the "Crab Orchard" whiskey manufactured at these plants. It never received any money, funds, or other thing of value from the Crab Orchard Company. It never distilled any whiskey at any time, or at any place, for the Crab Orchard Company. It paid the entire cost of acquiring and advertising, building up and maintaining the brand name, "Crab Orchard."

On the other hand, Crab Orchard Distillery Company was never "engaged in the business of manufactur-

ing distilled spirits'' at any distillery in Kentucky; and it did not manufacture any "distilled spirits for sale," or for any other purpose whatsoever. It has never had any money, income, assets, or other kind of property, tangible or intangible. It has never had any employees of any kind in Kentucky. It has never paid for any label used in connection with the maufacture of any whiskey. It has never owned the brand "Crab Orchard" or had any right, title, or interest therein.

In sustaining its burden the Commonwealth seems to rely upon the following:

"(1)  That Crab Orchard Distillery Company had signed an Internal Revenue Form 27-A that it 'intends * * * to carry on or engage in the business of distilling whiskey from grain' (at Nos. 3 and 19); with 'Fee simple title vested in National Distillers * * * whose written consent will be obtained.'

"(2)  That National Distillers had 'leased' to Crab Orchard Distillery Company Nos. 3 and 19, 'for the purpose of the manufacture of whiskey by said Distillery Company for said National;' and

"(3)  That in New York two labels of 'Crab Orchard' whiskey contained the words 'Distilled by The Crab Orchard Distillery Company Louisville, Ky. Distributed by National Distillers Products Corp. Louisville, Ky. New York, N. Y.' "

The first above expresses merely an intention. The second is merely a fictional procedure to comply with supposed Internal Revenue requirements, and the third was used in order to comply with the New York Liquor authorities rule.

To accept the contentions of the appellee relative to the three items above would mean acceptance of a theory and inference of something that does not tally with the obvious facts. Appellee's theory is, in truth, based upon a foundation taken for granted without distinguishing the apparent from the real. It is not an induction from observed facts but a deduction from a previously assumed theory. It must, therefore, fall.

The court below based its judgment upon Logan, Auditor, v. Greenbrier Distilling Co., 286 Ky. 319, 150

S. W. 2d 673. A comparison of the facts involved in the Greenbrier case and the instant case show some vital factual differences. In the Greenbrier case, Stagg Company and Greenbrier were active independent corporations. Stagg contracted to manufacture distilled spirits for Greenbrier. Stagg, as agent for Greenbrier, made whiskey for Greenbrier, which when manufactured did not belong to Stagg. Greenbrier owned its own trademark or brand.

In the instant case, Crab Orchard was completely owned by National Distillers and entirely inactive. There was no agency given National Distillers by Crab Orchard. Crab Orchard did not operate the distilleries, and the whiskey when manufactured belonged to National Distillers. The principle as laid down in Esbeco Distilling Co. v. Shannon, Auditor, 278 Ky. 689, 129 S. W. 2d 172, 174, appears to us to be controlling here. The facts in the instant case are much stronger than the facts in the Esbeco case. There the distillery was leased to appellant but absolute control of the plant and the manufacturing process was retained by the owner. The contract was for the sale and purchase of whiskey, and the whiskey when manufactured was purchased by, and belonged to, Esbeco. It was held by the court that: "The reference in the agreements between appellant and the Dant & Head Distilling Company to a lease of the distillery premises of the latter was merely a fiction to comply with certain regulations of the Internal Revenue Department of the United States to enable the buyer to label the whisky in its name and did not make appellant an operator of a distillery within the meaning of the statute in question."

In the instant case, Crab Orchard had no interest whatsoever in the distilling or the distilled product. Even though the conclusions in the Esbeco case above had been otherwise, we would yet be justified in saying there would be no conflict therewith, or at least not such as would induce us to alter or modify our conclusion herein, since this case, based upon the obviously stronger set of facts, could be easily distinguished from it.

Beginning, then, with the facts and tracing their relations, we can arrive at no other conclusion than that, for tax purposes, there is no corporate distinction be-

tween National and its wholly-owned subsidiary. See Commonwealth on Relation, etc., v. Southern Railway Co., 193 Ky. 474, 237 S. W. 11, and Kentucky Tax Commission et al. v. Fourth Avenue Amusement Co., 293 Ky. 668, 170 S. W. 2d 42.

From the analysis, thus made, it is seen that both National and Crab Orchard were not distillers of the same "Crab Orchard" brand. Consequently, the court below should have held that National, not Crab Orchard, is the distiller, and having once paid the tax it cannot again be collected.

Wherefore, the judgment is reversed for entry of judgment in keeping herewith.