State *ex rel.* Knox, Atty.-Gen., *v.* Panhandle Oil Co.*

(Division B. April 25, 1927. Suggestion of Error Overruled May 16, 1927.)

[112 So. 584. No. 26366.]

Taxation. *Tax on gasoline dealers, measured by amount sold, held "privilege tax" payable on gasoline used by federal government in operating its instrumentalities (Laws 1924, chapter 115, as amended Laws 1926, chapter 119).*

Federal government *held* not entitled to buy gasoline to operate its instrumentalities without payment of tax under Laws 1924, chapter 115, as amended by Laws 1926, chapter 119, charged gasoline dealers on each gallon sold, since such tax is a "privilege tax," amount of which is measured by number of gallons sold, and does not constitute a direct tax against instrumentality of Federal government.

*Corpus Juris-Cyc. References: Licenses, 37CJ, p. 171, n. 57; p. 174, n. 95; Taxation, 37Cyc, p. 879, n. 43.

Appeal from circuit court of Hinds county, First district.

Hon. W. H. Potter, Judge.

Suit by the state, on the relation of Knox, attorney-general, against the Panhandle Oil Company. From a

judgment overruling a demurrer to the special plea of defendant, complainant appeals. Reversed and judgment rendered.

*J. L. Byrd,* Assistant Attorney-General, for appellant.

The only questions in this case, as we see it, are whether or not the gasoline tax is a privilege tax or an excise tax, or whether it is a property tax; and whether or not the tax is on the dealer or on the merchandise. We concede the law to be that no tax can be laid upon an instrumentality of the Federal Government, and we concede the law further to be that if the tax is a tax on the article and not on the dealer of the article, that it is not a privilege tax.

We contend, however, that levy of a tax on an article used by an instrumentality of the Federal Government is not a tax upon the instrumentality itself, but is a tax upon the dealer. The first tax on the privilege of handling gasoline is found in chapter 116, Laws of 1922.

By chapter 115, Laws of 1924, the legislature reiterated its intention to tax the privilege of distributing gasoline, and increased the tax but left the verbiage of section two of that act just as it was in chapter 116, Laws of 1922.

By chapter 119, Laws of 1926, the legislature increased the tax, but by the title of the act and by section 2 of that act declared that the business of distributing gasoline is a privilege and that for such privilege every distributor or dealer should pay a privilege tax; but the Act of 1926 went further and imposed an excise tax upon the use of gasoline by persons in motor driven vehicles upon the public roads where the tax had not been paid theretofore.

The legislative intent was to levy a privilege tax upon the person dealing in gasoline, and to hold otherwise would be to give to the legislative act a meaning not found in the act and a meaning absolutely contrary to the de-

clared meaning of the legislature as shown by the act. In *Bowman, Attorney-General,* v. *Continental Oil Company,* 65 L. Ed. 1139, the supreme court upheld the New Mexico gas tax. The same questions were raised in that case as are raised here.

The levying of a privilege tax and the fixing of the amount of the privilege according to the amount of any commodity sold, is not a new thing in this state. Section 3498, Code of 1906, as amended imposed a tax on canning factories. The constitutionality of this act was challenged in *Barataria Canning Company* v. *State ex rel.,* 101 Miss. 890. The act, chapter 192, Laws of 1908, fixed the additional privilege license at three cents per barrel just as the gasoline tax to be paid by the gasoline dealer is fixed at four cents per gallon.

The supreme court of the United States has held that a privilege tax levied on a person or corporation doing business with the United States Government or one of its instrumentalities, is not a tax upon that instrumentality and is not void on that account. *Fidelity & Deposit Company of Maryland* v. *Commonwealth of Pennsylvania,* 60 (U. S.) L. Ed. 664; *Metcalf* v. *Mitchell,* 70 L. Ed. 384.

The cause should be reversed and judgment entered here.

*George Butler,* for appellee.

The question is whether chapter 116, Laws of 1922, as amended by chapter 115, Laws of 1924, imposing a tax of three cents per gallon on gasoline, is applicable: (a) To gasoline sold by appellee to the United States Government for its Coast Guard Fleet of boats; and (b) To gasoline sold by appellee to the United States Government for the United States Veterans Hospital. We say that under a proper interpretation of the act in question

the tax thereby imposed is not applicable to the gasoline sold to and issued by the United States Government for either of the purposes.

While section 2 of the act purports to impose a tax upon the dealer or distributor for the privilege of engaging in the sale of gasoline, it is apparent by reading the act as a whole, that the tax is not upon the dealer or distributor, but is a tax on the gross sales of the gasoline. The gasoline is liable for the tax and the tax is laid upon the gasoline. Moreover, the act shows that it was not the intention to impose an occupation tax measured by the volume of sales or stocks, such as is imposed on stores or other businesses, because the legislature recognized that the imposition of this tax upon sales and transactions in interstate commerce would be a direct burden upon such commerce, and exempted, from the operation of the statute, such sales. In this respect, the statute is similar to that involved in *Texas Company* v. *Brown,* 258 U. S. 466, 66 L. Ed. 721.

Again, the payment of the tax is not a condition precedent to the right to do business. The validity of this kind of a tax is upheld on the theory that it is a license fee or tax upon a vehicle, measured by the use of the highway. Blashfield's Ency. of Automobile Law, page 2484. See *Opinion of the Justices,* 81 New Hampshire, 552, relating to a flat rate of two cents per gallon on gasoline or motor fuel sold in the state.

To the same effect is *Gaffill* v. *Bracken,* 195 Ind. 551, 145 N. E. 313; *Standard Oil Company* v. *Broddie,* 153 Ark. 114; *Altitude Oil Company* v. *People,* 70 Calif. 452, 202 Pac. 180; *State* v. *Lawrence,* 108 Miss. 292; *Bowman* v. *Continental Oil Co.,* 256 U. S. 642, 65 L. Ed. 1139.

Tested by the decisions of this state and of the supreme court of the United States, the tax here imposed is a direct burden. *Knox* v. *R. R.,* 138 Miss. 70; *State* v. *Lawrence,* 105 Miss. 58; *Thompson* v. *Kreutzer,* 112 Miss. 165; *Thompson* v. *McLeod,* 112 Miss. 383; *C. R. I. & P.*

*R. R. Co.* v. *Robinson,* 122 Miss. 417.; *Grocery Company* v. *Robinson,* 126 Miss. 34; *Barnes* v. *Jones,* 139 Miss. 675.

It will thus be seen that under the Mississippi authorities the tax here imposed is a direct burden, because it is a tax on sales without reference to gains or profits and a direct burden upon the user of the gasoline. There is no agency intervening between the retailer and the government. There is no opportunity to distribute the burden. It falls immediately and directly upon the consumer.

The Federal cases are all to the effect that the tax in question is a direct tax. To construe the act as imposing the tax on the gasoline in question, or upon the sales of the gasoline in question would render it ineffective. *McCullouch* v. *Maryland,* 4 Wheat. 429 in *Osborn* v. *Bank,* 9 Wheat. 867; *Brown* v. *Maryland,* 25 U. S. 444, 6 L. Ed. 678; *Weston* v. *Charleston,* 27 U. S. 449, 7 L. Ed. 481; *Dabbs* v. *Erie Co.,* 4 U. S. 435, 10 L. Ed. 1022; *Almy* v. *California,* 65 U. S. 169, 16 L. Ed. 644; *Northern Central R. R.* v. *Jackson,* 74 U. S. 262, 19 L. Ed. 888; *Cook* v. *Pennsylvania,* 97 U. S. 566, 24 L. Ed. 1025; *Philadelphia* v. *Pennsylvania,* 122 U. S. 326, 30 L. Ed. 1200; *Leloup* v. *Mobile,* 127 U. S. 640; *Western Union Tel. Co.* v. *Texas,* 105 U. S. 460, 26 L. Ed. 1067; *Williams* v. *Talledega,* 226 U. S. 402, 57 L. Ed. 275.

That a gross sale or a gross income tax is a direct tax is conclusively established by the supreme court of the United States. Under the commerce clause, the states may not unduly burden interstate commerce by taxation or otherwise. And in the cases cited below, the supreme court has held that a gross sale or gross income tax is a direct burden and consequently void. *Crew Lewick & Co.* v. *Pennsylvania,* 245 U. S. 288, 62 L. Ed. 292; *U. S. Glue Co.* v. *Oak Creek,* 247 U. S. 321, 62 L. Ed. 1135. See, also, *Shafer* v. *Carter,* 252 U. S. 137, 64 L. Ed. 445; *Miller* v. *I. C. R. R.,* 111 So. 558.

If it is a direct tax and directly and unduly burdens

interstate commerce when applied to such transactions, then manifestly it is such a direct burden on the Federal Government as to fall within the rule clearly illustrated in *Gillespie* v. *Oklahoma,* 257 U. S. 501, 66 L. Ed. 338, to the effect that the criterion of interference by the state with interstate commerce is one of degree, while the rule as to instrumentalities of the United States on the other hand is absolute in form at least stricter in substance.

Coming now to the cases involving the imposition of a tax on the Federal Government or its instrumentalities, it will be seen that they are immune from any direct burden whatsoever. *Choctaw R. R., etc.* v. *Harrison,* 235 U. S. 292, 59 L. Ed. 235; *Indian Territory Oil Co.* v. *Oklahoma,* 240 U. S. 522, 60 L. Ed. 779; *Gillespie* v. *Oklahoma,* 257 U. S. 501, 66 L. Ed. 338; *Johnson* v. *Maryland,* 254 U. S. 51, 65 L. Ed. 128.

If the act is to be construed as applying to the sales in question, so much of it as is so applied should be stricken down under the principles announced in *Bowman* v. *Continental Oil Co.,* 65 L. Ed. 1139, 256 U. S. 642, and *Texas Company* v. *Brown,* 258 U. S. 466; 66 L. Ed. 721.

Argued orally by *J. L. Byrd,* Assistant Attorney-General, for appellant, and *George Butler,* for appellee.

HOLDEN, P. J., delivered the opinion of the court.

The suit is by the attorney-general, for the state, to recover about five thousand dollars from the appellee, Panhandle Oil Company, as taxes due by the oil company for the sale of gasoline, under chapter 115 of the Laws of 1924 and chapter 119 of the Laws of 1926, the verbiage of which is the same, and provides, in part, as follows:

"An act to amend section 2 of chapter 115 of the Laws of 1924 so as to increase the tax on the privilege of distributing gasoline in this state; imposing an excise tax

upon the use of gasoline by persons in motor driven vehicles upon the public roads and streets of the state where no tax on the distribution thereof has been, or is required to be paid by the distributor, retailer, or importer; providing for the payment thereof; and to amend section 3 of chapter 115 of the Laws of 1924 so as to provide for the disposition thereof.

''Section 1. Be it enacted by the legislature of the state of Mississippi, that section 2 of chapter 115 of the Laws of 1924, be and the same is hereby amended so as to read as follows:

''Privilege tax on gasoline.

''Sec. 2. Any person engaged in the business of distributor of gasoline, or retail dealer of gasoline, shall pay for the privilege of engaging in such business an excise tax of four cents (4¢) per gallon upon the sale of gasoline by such dealer in this state. No retail dealer shall be required to pay said excise tax when such tax may be paid by the distributor of gasoline, which may be sold at retail by such retailer, nor shall the distributor pay such tax when the same is paid by the retailer.''

The declaration contains several counts, and the oil company filed several special pleas to the different counts; but, as the counts of the declaration and the special pleas thereto present the same legal question, we shall consider the declaration as containing but one count, and the pleas as but one plea to the declaration.

The appellee oil company pleaded that the gasoline sold by it upon which the tax is sought to be collected by the state, was sold by the oil company to the United States government for use in the operation of the United States Coast Guard, and to the United States Veterans' Hospital, and that no tax was charged and collected upon the gasoline sold to these government agencies, because the state statute taxing the sale of gasoline was not intended to, and does not, impose a tax upon sales and distribution of gasoline to government instrumentalities;

that the legislature did not intend to tax each gallon of gasoline sold to the United States government to be used in the operation of its instrumentalities, but that, if such was the intent of the legislature, the tax is a property tax, or direct tax, assessed against each gallon of the gasoline sold to the United States government, and that this would be taxing an instrumentality of the Federal Government, which is not permissible. The attorney-general demurred to the special plea of the appellee oil company, and the demurrer was overruled, from which ruling this appeal was prosecuted.

As we understand the record the question before us is simply this: Is the Federal Government entitled to the privilege of buying its gasoline in this state, with which to operate its instrumentalities, at a price less the amount of the state tax charged gasoline dealers on each gallon of gasoline sold, under the taxing act, *supra?* We think not.

It will be observed that the statute fixing the tax on the sale of gasoline, taxes the dealer for the privilege of engaging in the business of selling gasoline. It is therefore a privilege tax against the dealer for the right to carry on the business, and it is not a property tax; but the gallonage sold by the dealer is merely the measure of the tax to be charged the dealer for the privilege of carrying on the business of selling gasoline. This construction of the act seems to be manifest from the language. The tax being a privilege tax, the amount of which is measured by the number of gallons sold by the dealer, it cannot, in any view, be said to be a direct tax against an instrumentality of the Federal Government.

Furthermore, we do not think the contention of the appellee oil company is maintainable, even if the tax here involved was a property tax upon the gasoline used in the operation of an instrumentality of the government, because no tax is here imposed upon the gasoline while it is the property of the government, but the tax is im-

posed (assuming that it is a direct tax upon the gasoline) upon gasoline while it is the property of the dealer; and therefore we cannot see that it would be, upon any theory, a tax on an instrumentality of the government.

Of course a tax of four cents per gallon against the gasoline while it is the property of the government would not be permissible, but the tax here, as we have said, in the first place, is a privilege tax on the dealer. But, assuming it to be a direct tax burden on the gasoline, still the tax is not attempted to be put upon the gasoline while in the hands of the government, but it is charged against the dealer on each gallon of gasoline sold before the government purchases the gasoline; consequently it is not a tax on the property or instrumentality of the government.

To hold otherwise than the above would possibly bring about absurd consequences. For instance, government employees would claim exemption from state privilege taxes on any commodity that they might purchase with which to operate any instrumentality of the government or might even go so far as to claim this privilege for the food and clothing of the employees operating such instrumentality.

This is not a tax upon the persons to whom the dealer sells the gasoline, but it is upon the dealer, which he includes in his selling price, and is measured by the amount of gasoline sold.

The supreme court of the United States has held that the states are within their rights in taxing the privilege of carrying on businesses, and that the Federal Government is not entitled to have such tax annulled upon its purchases with which to operate its instrumentalities. *Metcalf* v. *Mitchell*, 269 U. S. 514, 46 S. Ct. 172, 70 L. Ed. 384; *Fidelity & Deposit Co.* v. *Commonwealth of Pennsylvania*, 240 U. S. 319, 36 S. Ct. 298, 60 L. Ed. 664.

That the tax here in question is a privilege tax on the dealer and not a tax on the thing sold or a tax on the per-

son who buys the commodity, was clearly decided by this court in *Barataria Canning Co.* v. *State,* 101 Miss. 890, 58 So. 769. In that case the court held that the tax was not imposed on the thing sold, but was a tax to be paid by the person engaged in the business of packing or canning oysters in this state, or upon the local dealer selling or shipping the oysters, and that the tax was imposed as a privilege tax for conducting the business in this state, and that the amount of the tax was measured and fixed by the number of barrels of oysters sold by the dealer. We think the case is in point, and is decisive of the case at bar.

Something is said in the brief of the attorney-general suggesting the idea that, if this court holds the gasoline tax to be a property tax, it will be void as violative of section 112 of our Constitution, and that such decision would be disastrous to our privilege tax laws. We do not think the tax here involved is a property tax, but if it is a property tax, and the tax is imposed upon the gasoline before it becomes the property of the government to be used in the operation of one of its instrumentalities, the tax will not be against an instrumentality of the government, because the tax is imposed before the government acquires the property, and therefore it is not a tax on an instrumentality of the government.

The legislature may possibly exempt the dealers from the tax on gasoline sold and used in the operation of the instrumentalities of the United States government, but so far this has not been done.

In view of these conclusions, we think the lower court erred in overruling the demurrer filed by the state, and for this reason the judgment of the lower court is reversed, and judgment entered here for the appellant.

Reversed, and judgment here for the appellant.

*Reversed.*