PANHANDLE OIL COMPANY *v.* MISSISSIPPI EX
REL. KNOX, ATTORNEY GENERAL.

No. 288.   Argued March 5, 1928.—Decided May 14, 1928.

*Mr. George Butler* for plaintiff in error.

The Acts in question, as construed, are void in that they impose a direct burden and tax upon the activities and instrumentalities of the Federal Government. *McCulloch* v. *Maryland,* 4 Wheat. 316; *Dobbins* v. *Erie County,* 16 Pet. 435; *Osborn* v. *Bank,* 9 Wheat. 138; *Ohio* v. *Thomas,* 173 U. S. 276; *Johnson* v. *Maryland,* 254 U. S. 51; *Gillespie* v. *Oklahoma,* 257 U. S. 501; *Metcalf* v. *Mitchell,* 269 U. S. 514; *Crandall* v. *Nevada,* 6 Wall. 35; *Crutcher* v. *Kentucky,* 141 U. S. 47; *Western Union* v. *Kansas,* 216 U. S. 1; *Western Union* v. *Texas,* 105 U. S. 460; *Philadelphia, etc., Steamship Co.* v. *Pennsylvania,* 122 U. S. 326; *Galveston, etc., R. R. Co.* v. *Texas,* 210 U. S. 217; *Standard Oil Co.* v. *Graves,* 249

U. S. 389; *Askren* v. *Continental Oil Co.*, 252 U. S. 444; *Bowman* v. *Continental Oil Co.*, 256 U. S. 642; *Indian Territory Oil Co.* v. *Oklahoma,* 240 U. S. 522; *Wagner* v. *Covington,* 251 U. S. 95; *St. Louis R. R. Co.* v. *Arkansas,* 235 U. S. 230; *Fidelity & Deposit Co.* v. *Pennsylvania,* 240 U. S. 319.

*Mr. J. L. Byrd,* Assistant Attorney General of Mississippi, with whom *Mr. Rush H. Knox,* Attorney General, was on the brief, for defendant in error.

The mere fact that a private individual does business with an instrumentality of the Federal Government, does not clothe him with immunity from taxation which is given to the Federal Government and its instrumentalities; and the fact that such a person is required to pay the tax for engaging in business does not and cannot hamper or burden any instrumentality of the Federal Government. *Fidelity & Deposit Co.* v. *Pennsylvania,* 240 U. S. 319; *Baltimore Ship Bldg. Co.* v. *Mayor of Baltimore,* 195 U. S. 375; *Choctaw, O. & G. R. R. Co.* v. *Mackey,* 256 U. S. 531; *Gromer* v. *Standard Dredging Co.,* 224 U. S. 362; *Metcalf* v. *Mitchell,* 269 U. S. 514.

It is admitted by the demurrer, that the tax was not collected from the United States Government. Therefore, we say if the collection of the tax from the Government, or the collection of an amount for the gasoline sufficient to include the tax, would be void, we do not have that question here for the reason that the Government has not paid any tax and the State is not demanding a tax from the Government, but is demanding a tax from the distributor or dealer in gasoline for the right to engage in the business.

Plaintiff in error has no right to raise the question. No pretense is made that it is a part of the United States Government or an instrumentality of the Government. Therefore, the question as to whether or not the Govern-

ment will pay an amount sufficient to yield a reasonable profit plus the tax, is a matter of private contract, and it is not mandatory on the Government to purchase this gasoline at a stipulated price, but it can drive any bargain it desires, and neither is it mandatory on the plaintiff in error to sell to the Government with the tax added or without the tax added, it all being a matter of contract.

A person who would strike down a state statute as being violative of the Federal Constitution, must show that he is within the class of persons with respect to whom the Act is unconstitutional, and 'that the alleged unconstitutional feature injures him. *Heald, Executor; v. District of Columbia,* 254 U. S. 20.

, MR. JUSTICE BUTLER delivered the opinion of the Court.

Chapter 116 of the Laws of Mississippi of 1922 provided that " any person engaged in the business of distributing gasoline, or retail dealer in gasoline, shall pay for the privilege of engaging in such business an excise tax of 1¢ [one cent] per gallon upon the sale of gasoline   .   .   . ," except that sold in interstate commerce or purchased outside the State and brought in by the consumer for his own use.   Chapter 115, Laws of 1924, increased the tax to three cents and c. 119, Laws of 1926, made it four cents per gallon.   Since some time in 1925 petitioner has been engaged in that business.   The State sued to recover taxes claimed on account of sales made by petitioner to the United States for the use of its Coast Guard Fleet in service in the Gulf of Mexico and its Veterans' Hospital at Gulfport.   Some of the sales were made while the Act of 1924 was in force and some after the rate had been increased by the Act of 1926.   Accordingly the demand was for three cents a gallon on some and four cents on the rest.   Petitioner defended on the ground that these statutes, if construed to impose taxes on such sales, are

repugnant to the federal Constitution. The court of first instance sustained that contention and the State appealed. The Supreme Court held the exaction a valid privilege tax measured by the number of gallons sold; that it was not a tax upon instrumentalities of the federal government and that the United States was not entitled to buy such gasoline without payment of the taxes charged dealers. 147 Miss. 663.

The United States is empowered by the Constitution to maintain and operate the fleet and hospital. Art. I, § 8. That authorization and laws enacted pursuant thereto are supreme (Art. VI); and, in case of conflict, they control state enactments. The States may not burden or interfere with the exertion of national power or make it a source of revenue or take the funds raised or tax the means used for the performance of federal functions. *McCulloch* v. *Maryland,* 4 Wheat. 316, 425, *et seq.* *Dobbins* v. *The Commissioners of Erie County,* 16 Pet. 435, 448. *Ohio* v. *Thomas,* 173 U. S. 276. *Choctaw & Gulf R. R.* v. *Harrison,* 235 U. S. 292. *Indian Oil Co.* v. *Oklahoma,* 240 U. S. 522. *Johnson* v. *Maryland,* 254 U. S. 51. *Clallam County* v. *United States,* 263 U. S. 341, 344. *Northwestern Mutual Life Ins. Co.* v. *Wisconsin,* 275 U. S. 136. *New Brunswick* v. *United States,* 276 U. S. 547. The strictness of that rule was emphasized in *Gillespie* v. *Oklahoma,* 257 U. S. 501, 505. The right of the United States to make such purchases is derived from the Constitution. The petitioner's right to make sales to the United States was not given by the State and does not depend on state laws; it results from the authority of the national government under the Constitution to choose its own means and sources of supply. While Mississippi may impose charges upon petitioner for the privilege of carrying on trade that is subject to the power of the State, it may not lay any tax upon transactions by which the United States secures the things desired for its governmental purposes.

The validity of the taxes claimed is to be determined by the practical effect of enforcement in respect of sales to the government. *Wagner* v. *City of Covington,* 251 U. S. 95, 102. A charge at the prescribed rate is made on account of every gallon acquired by the United States. It is immaterial that the seller and not the purchaser is required to report and make payment to the State. Sale and purchase constitute a transaction by which the tax is measured and on which the burden rests. The amount of money claimed by the State rises and falls precisely as does the quantity of gasoline so secured by the Government. It depends immediately upon the number of gallons. The necessary operation of these enactments when so construed is directly to retard, impede and burden the exertion by the United States of its constitutional powers to operate the fleet and hospital. *McCulloch* v. *Maryland, supra,* 436. *Gillespie* v. *Oklahoma, supra,* 505. *Jaybird Mining Co.* v. *Weir,* 271 U. S. 609, 613. To use the number of gallons sold the United States as a measure of the privilege tax is in substance and legal effect to tax the sale. *Telegraph Co.* v. *Texas,* 105 U. S. 460. *Frick* v. *Pennsylvania,* 268 U. S. 473, 494. And that is to tax the United States—to exact tribute on its transactions and apply the same to the support of the State.

The exactions demanded from petitioner infringe its right to have the constitutional independence of the United States in respect of such purchases remain untrammeled. *Osborn* v. *United States Bank,* 9 Wheat. 738, 867. *Telegraph Co.* v. *Texas, supra.* Cf. *Terrace* v. *Thompson,* 263 U. S. 197, 216. Petitioner is not liable for the taxes claimed.

*Judgment reversed.*

Mr. Justice Holmes.

The State of Mississippi in 1924 and 1926 imposed upon distributors and retail dealers of gasoline, for the

privilege of engaging in the business, an excise tax of three cents and four cents respectively per gallon sold in the State. The Supreme Court of the State declares it to be a privilege tax but points out that whether this tax is on the privilege or on the property it is imposed before the gasoline has left the dealer's hands. The plaintiff in error, a dealer, was sued by the State for certain sums that were due under the statutes. It pleaded that the sales in respect of which the tax was demanded were sales to the United States for the use of its Coast Guard and Veterans' Hospital, that these being instrumentalities of the government it did not include the amount of the tax in the price charged, and that the statute did not and could not tax the dealer for them consistently with the Constitution of the United States. The Supreme Court of the State upheld the tax and pointed out the extreme consequences to which a different decision might lead.

It seems to me that the State Court was right. I should say plainly right, but for the effect of certain dicta of Chief Justice Marshall which culminated in or rather were founded upon his often quoted proposition that the power to tax is the power to destroy. In those days it was not recognized as it is today that most of the distinctions of the law are distinctions of degree. If the States had any power it was assumed that they had all power, and that the necessary alternative was to deny it altogether. But this Court which so often has defeated the attempt to tax in certain ways can defeat an attempt to discriminate or otherwise go too far without wholly abolishing the power to tax. The power to tax is not the power to destroy while this Court sits. The power to fix rates is the power to destroy if unlimited, but this Court while it endeavors to prevent confiscation does not prevent the fixing of rates. A tax is not an unconstitutional regulation in every case where an absolute prohibition of sales would be one. *Hatch* v. *Reardon,* 204 U. S. 152, 162.

To come down more closely to the question before us, when the Government comes into a State to purchase I do not perceive why it should be entitled to stand differently from any other purchaser. It avails itself of the machinery furnished by the State and I do not see why it should not contribute in the same proportion that every other purchaser contributes for the privileges that it uses. It has no better or other right to use them than anyone else. The cost of maintaining the State that makes the business possible is just as necessary an element in the cost of production as labor or coal. If the plaintiff in error had paid the tax and had added it to the price, the Government would have had nothing to say. It could take the gasoline or leave it but it could not require the seller to abate his charge even if it had been arbitrarily increased in the hope of getting more from the Government than could be got from the public at large. But in fact the Government has not attempted to say anything in this case, which is simply that of a dealer trying to cut down a legitimate tax on his business because certain purchasers proposed to use the goods in a certain way, although so far as the sale was concerned they were free to turn the gasoline into the ocean, use it for private purposes or sell it again. It does not appear that the Government would have refused to pay a price that included the tax if demanded, but if the Government had refused, it would not have exonerated the seller. *Pierce Oil Corporation* v. *Hopkins*, 264 U. S. 137, 139.

An imperfect analogy with taxation that affects interstate commerce is relied upon. Even the law on that subject has been liberalized since the decision of most of the cases cited. *Sonneborn Brothers* v. *Cureton*, 262 U. S. 506. But obviously it does not follow from the invalidity of a tax directly burdening interstate commerce that a tax upon a domestic seller is bad because he may be able to shift the burden to a purchaser, even

though an agency of the Government, who is willing to pay the price with the tax and who has no rational ground for demanding favor. I am not aware that the President, the Members of Congress, the Judiciary or, to come nearer to the case in hand, the Coast Guard or the officials of the Veterans' Hospital, because they are instrumentalities of government and cannot function naked and unfed, hitherto have been held entitled to have their bills for food and clothing cut down so far as their butchers and tailors have been taxed on their sales; and I had not supposed that the butchers and tailors could omit from their tax returns all receipts from the large class of customers to which I have referred. The question of interference with Government, I repeat, is one of reasonableness and degree and it seems to me that the interference in this case is too remote. *Metcalf & Eddy* v. *Mitchell,* 269 U. S. 514.

MR. JUSTICE BRANDEIS and MR. JUSTICE STONE agree with this opinion.

MR. JUSTICE McREYNOLDS.

I am unable to think that every man who sells a gallon of gasoline to be used by the United States thereby becomes a federal instrumentality, with the privilege of claiming freedom from taxation by the State.

The doctrine of immunity is well established, but it ought not to be extended beyond the reasons which underlie it. Its limitations were well pointed out fifty years ago in *Railroad Company* v. *Peniston,* 18 Wall. 5, 30, 31—" It cannot be that a State tax which remotely affects the efficient exercise of a Federal power is for that reason alone inhibited by the Constitution. To hold that would be to deny to the States all power to tax persons or property. Every tax levied by a State withdraws from the reach of Federal taxation a portion of the property

from which it is taken, and to that extent diminishes the subject upon which Federal taxes may be laid. The States are, and they must ever be, coexistent with the National government. Neither may destroy the other. Hence the Federal Constitution must receive a practical construction. Its limitations and its implied prohibitions must not be extended so far as to destroy the necessary powers of the States, or prevent their efficient exercise."

MR. JUSTICE STONE concurs in these views.