## Logan, Auditor of Public Accounts, et al. v. Greenbrier Distilling Co.

Feb. 11, 1941.

320

Hubert Meredith, Attorney General, and Harry D. France, Assistant Attorney General, for appellants.

Hazelrigg & Cox for appellee.

OPINION OF THE COURT BY JUDGE RATLIFF—Reversing.

The Greenbrier Distilling Company, a corporation, brought this action in the Franklin circuit court against D. A. Logan, Auditor of Public Accounts, H. Clyde Reeves, Commissioner of Revenue, and J. Dan Talbot, Commissioner of Finance of the Commonwealth of Kentucky, to recover from the Commonwealth a refund of $1,000, paid to the Commonwealth by appellee for a distiller's license fee provided for in Section 2554b-114, Kentucky Statutes, 1938 Supplement, being a portion of Chapter 2 of the 1938 Act of the General Assembly of Kentucky, known as the Alcoholic Beverage Control Act.

The court overruled a demurrer to appellee's petition and appellants failing to plead further, judgment was entered for the amount sued for. The Commonwealth has appealed.

Since the case must be decided upon the allegations of the petition, for accuracy and correct understanding of the facts, we here reproduce the pertinent parts of the petition:

"Plaintiff states that The Geo. T. Stagg Company, a corporation organized under the laws of the State of Kentucky, was on July 1st of each of the years 1938 and 1939, the owner of a distilling plant at Frankfort, Kentucky, at which it manufactured distilled spirits and that said company as required by Section 2554b-114 of said Statutes paid a license fee of $500.00 for each of said license years, authorizing it to manufacture distilled spirits, from July 1st, 1938 to June 30th, 1939, and from July 1st, 1939 to June 30, 1940.

"Plaintiff states that it and The Geo. T. Stagg

Company are affiliated companies, the entire stock of each being owned by a parent corporation which is a non-resident of Kentucky. That shortly prior to July 1, 1938, through inter-company agreement The Geo. T. Stagg Company undertook to manufacture in the name of the plaintiff certain quantities of distilled spirits which were to be and were manufactured between July 1, 1938 and June 30th, 1939; that likewise prior to February 12, 1940, a similar agreement was entered into for the manufacture of certain quantities of distilled spirits between. that date and June 30, 1940; that in both instances and to meet the technical requirements of the Internal Revenue Department of the United States the said Geo. T. Stagg Company executed a lease by which it consents to the use of its distillery premises by the plaintiff; that the said distilled spirits as manufactured remained in possession of and under the control of The Geo. T. Stagg Company, was stored in its warehouses and at no time became the property of plaintiff; that the lease, consent and agreement so required and executed were fictional in fact and done so that the said distilled spirits could bear the name or brand of the plaintiff company, thus enabling the perpetuation and continuity of the use of its name thereon as a trade-mark or brand which by long and extended use has become a valuable trade-mark or name, and that this could not have been done except by reason of compliance with the said Internal Revenue technical regulations; that the said distilled spirits were manufactured solely under the supervision and control of the Geo. T. Stagg Company and at no time did the plaintiff have possession of or operate or exercise any control of or participate in the manufacture of same at the said distillery premises; nor did it furnish any labor or materials in connection therewith; nor was it ever required to furnish warehouse bonds by the Internal Revenue Department of the United States as is required of all distillers operating distilleries in the usual manner, but that said warehouse bond was furnished by The Geo. T. Stagg Company covering the storing and care of said distilled spirits.

"Plaintiff further states that notwithstanding the fact that The Geo. T. Stagg Company had pro-

cured license to manufacture distilled spirits covering the period of time during which said distilled spirits were manufactured by it under the name of plaintiff company, the Department of Revenue of Kentucky through its officers and agents in both of said instances and before the manufacture of same would be permitted, required the plaintiff to procure a distiller's license in accordance with Section 2554b-114, Kentucky Statutes, and to pay therefor the distiller's license fee therein provided. That plaintiff accordingly on July 1st, 1938, procured a license authorizing it to manufacture distilled spirits between that date and June 30th, 1939, for which it paid the sum of $500.00 and likewise it procured license for the same privilege from February 12, 1940, to June 30, 1940, for which it was required to pay $500.00, thus the plaintiff was required to procure said license and pay the fees therefor within the periods of time for which The Geo. T. Stagg Company had procured license and paid the proper fees.

"Plaintiff states that the said license fees required to be paid by it were exacted wrongfully and illegally and were paid when no such fees were due and the collection of same was not authorized or provided for under Subsection 1 of Section 2554b-114 of the Statutes, or otherwise."

The lease referred to was not filed with the petition, and we are governed by the allegations of the petition alone viewed in the light of the statutes relating to the subject matter involved.

Section 2554b-114, Kentucky Statutes, fixes distiller's license fee at $500 per annum. Section 2554b-98, Subsection 13, Kentucky Statutes, reads:

" 'Distillers' means and includes any person engaged in the business of manufacturing distilled spirits at any distillery in the Commonwealth of Kentucky, duly registered in the office of the Collector of Internal Revenue for the United States at Louisville, Kentucky."

Subsection 21 of the same section, supra, reads:

" 'Manufacturer' means and includes a vintner, distiller, rectifier, or brewer and any other person,

whether included in the aforesaid categories or not, engaged in the production and/or bottling of alcoholic beverages.''

The questions to be determined are whether or not appellee was lessee of the distillery and, if so, did it become a ''distiller'' or ''manufacturer'' of whisky in the meaning of the Statutes so as to be required to pay the license fees provided in the statute for the privilege of manufacturing or distilling whisky.

The substance of appellee's petition is that under the requirements of the Internal Revenue Department of the United States it leased the distillery plant and premises of the Geo. T. Stagg Company and by the terms of the lease appellee was to have the use of the distillery premises for the purpose of having the Geo. T. Stagg Company to manufacture for appellee certain quantities of distilled spirits bearing the trade-mark and brand of appellee.

Other allegations are made, however, which, according to the contention of appellee, negative the idea that appellee was a distiller in the meaning of the statute. One allegation is that the lease was fictional in fact and entered into so that the distilled spirits could bear the name or brand of appellee, and made to meet the ''technical'' requirements of the Internal Revenue Department of the United States. Conceding that the requirements for the lease may be termed ''technical'' yet it was a legal requirement and a necessary one to enable or authorize appellee to manufacture whisky bearing its name and brand and to accomplish the end desired.

Evidently the rule of the Internal Revenue Department of the United States is for a twofold purpose, (1) to prevent ''tax dodging'' by those who may engage in the manufacture of whisky, and (2) to require whisky to be labeled in the trade-mark or name of the distillery or person who manufactured it. Otherwise, the trade-mark or name would be false and misleading. If the contention of appellee is to prevail, we would have the situation of whisky sold on the market under the name and trade-mark of ''Green Brier Distilling Company,'' appellee, when in fact it did not manufacture it directly or indirectly and had nothing to do with it whatsoever in any way or manner and, therefore, not responsible

to the public for the purity or safety of the whisky when used for the purposes intended. It is thus seen that one of the purposes of the rule, and perhaps the most important one, is to place legal responsibility for the whisky on the distillery or person whose trade-mark and name it bears.

We do not think appellee should now be allowed to repudiate its lease or deny that it was the lessee of the distillery, on the ground that it was for technical purposes and fictional or that the lease had no legal significanse. It is obvious, therefore, that appellee became the lessee of the distillery for the purpose of manufacturing or having manufactured whisky for its use and benefit and bearing its name or brand, signifying that it was the manufacturer or distiller of the whisky.

The further allegation is made that the whisky was manufactured solely under the supervision and control of the Geo. T. Stagg Company and appellee at no time had possession of, or exercised any control over, the whisky, or participated in the manufacture of it at the distillery premises; nor did it furnish any labor or materials in connection therewith, or was it required to furnish warehouse bonds by the Internal Revenue Department of the United States, but that all of the things mentioned were done by the Geo. T. Stagg Company.

It is fundamental that a person may engage in a business without physically operating the business himself, but may operate or carry it on through and by another as his agent.

It is our view that appellee constituted the Geo. T. Stagg Company, its agent, for the purpose of manufacturing the whisky and it is not material that it gave its agent the broad powers and authority stated in the petition, since the principal may give his agent all the powers and authorities, unless prohibited by law, he, the principal, may desire.

Section 2554b-98 defines a distiller to mean and include any person engaged in the business of manufacturing distilled spirits *at any distillery* in the Commonwealth of Kentucky, but makes. no distinction whether the person so engaged is the actual owner of the distillery plant and premises or a lessee of same. The test is whether or not the person *engaged* in the business.

Appellee relies upon the cases of Shannon, Auditor of Public Accounts v. Esbeco Distilling Corporation, and Esbeco Distilling Company v. Shannon, Auditor of Public Accounts, the first one being reported in 275 Ky. 51, 120 S. W. (2d) 745, and the second one in 278 Ky. 689, 129 S. W. (2d) 172. For convenience, these opinions will be referred to as the first opinion and the second opinion, respectively, both of which were decided under Section 2554b-57, Kentucky Statutes, 1936 Edition, being a part of the 1934 Acts of the General Assembly of Kentucky. That section of the Statutes reads:

"For the privilege of distilling spirituous liquors, manufacturing vinous or intoxicating malt liquors there is assessed and there shall be paid an annual permit fee of and by every person engaged therein the sum of one thousand dollars for each and every manufacturing or distilling plant."

In the first opinion, supra, it was held that the license fee or tax was imposed upon every person exercising the privilege of manufacturing or distilling liquors and not upon the plant. The precise question involved in the present case was not determined in that case, apparently because the case was not sufficiently developed in certain respects relating to the connections between or exact status of the Dant & Head Distilling Company, owner of the distillery plant, and Esbeco Distilling Company, presumably the lessee, and the case was reversed and remanded for proceedings consistent with that opinion. It was held, however, in that opinion that every person who operates a plant himself for the distillation of liquors is required under the statute (supra) to pay the permit fee "whether he be owner or lessee."

Second opinion: Upon the return of the case the Esbeco Company filed an amended and substituted petition, together with photostatic copies of the agreement entered into between it and Dant & Head Company, and alleged that the Esbeco Company purchased from the Dant and Head Company 2,400 barrels of whisky at sixty-five cents a gallon under the 1936 contract, and from 1,200 to 1,500 gallons at sixty-two cents a gallon under the 1937 contract, all of the whisky to be manufactured by the seller, Dant & Head, and was delivered to the Esbeco Company at a fixed price per gallon, and the

contract refers to the parties as seller and buyer, respectively. Later on in the same opinion it is said that the statute does not require a distiller to pay the permit fee to enable him to *purchase* whisky manufactured by another distiller.

In the case at bar there is no allegation in the petition that the contract or arrangement made between the parties was for the purchase and sale of whisky, but to the contrary, as we have already stated, the substance of the petition is that the Geo. T. Stagg Company leased to appellee its distillery plant and premises. We think that the contract involved in the Esbeco Company cases, supra, and the one alleged in the petition in the case at bar materially differ, in that, the former was a contract for the purchase and sale of whisky and the latter was a lease of the distillery plant.

It is to be noticed, however, that in the second opinion, supra, it is stated that additional agreements were entered into between Esbeco Company and Dant & Head whereby the latter consented that its distillery might be used by Esbeco Company at intermittent intervals during the years 1936 and 1937 to be agreed upon by the parties; but, whether that additional agreement was included in the copies of the contract filed or whether it was an oral and supplemental one, the opinion does not disclose. It was also contended in that case that the claimed leasing of the distillery to Esbeco Company was a mere formality to comply with the technical regulations of the Internal Revenue Department of the United States in order that the whisky in question might be branded with plaintiff's name. Further allegations were made similar to the ones contained in the petition in the case at bar, in substance, that Esbeco Company did not manufacture the whisky; that it never operated the distillery plant, nor exercised control or supervision over it directly or indirectly or participated in the manufacture of the whisky; never furnished a warehouse bond, but that Dant & Head Company furnished the same, etc.

The contention was made by the Auditor, appellee in that case, that since Esbeco Company leased or used the distillery plant by consent of the owner it thereby exercised and accepted the special privilege conferred by the statute and thereby in effect became engaged in the manufacture of whisky, and for that reason it was

estopped to deny its liability for the license fees paid by it. That contention was rejected by this court and it was held that Esbeco Company did not exercise the privileges of a distiller in the meaning of the statute and that the reference in the agreements between the parties to a lease of the distillery premises was merely fiction to comply with certain regulations of the Internal Revenue Department of the United States to enable the buyer to label the whisky in its name and such did not make Esbeco Company an operator of the distillery within the meaning of the statute. It is further pointed out that under the contract Esbeco Company was not given the privilege of manufacturing distilled liquors at the plant of Dant & Head Company, but, on the other hand, absolute control of the plant and the manufacturing process was retained by the owner, and the contract was one merely for the sale and purchase of the whisky. It was further said that there is nothing in the statute tending to indicate a purpose by the Legislature to require a distiller to obtain a permit for the privilege of purchasing liquor manufactured by another distiller who has paid the permit fee prescribed by the statute, but if it should be conceded that the Statutes were ambiguous the benefit of the doubt should be resolved in favor of the taxpayer.

It will be noticed that the lease contract involved in the Esbeco Company case is essentially different from the one alleged in the petition in the case at bar, since the former was a contract for a straight-out purchase and sale of whisky, whereas in the case at bar the contract was a lease of the distillery plant.

We are not overlooking, however, that part of the opinion in the Esbeco Company case holding that the consent of Dant & Head for the use of its plant at inervals by Esbeco Company, indicating a lease contract, was for a technical purpose and fiction and Esbeco Company did not thereby become a distiller of whisky within the meaning of the statute and, therefore, not liable for the license fees. Perhaps that conclusion was based upon the principal contract of purchase and sale. If that be the proper construction of that opinion, then it does not militate against the contention of appellant that appellee as lessee of the distillery plant was for all legal purposes and intent engaged in the manufacture of whisky.

It was held in the Esbeco Company case, supra, that Section 2554b-57, Kentucky Statutes, under which the case was decided, meant that the license fees required should be paid by every person exercising the privilege of manufacturing or distilling whisky, and not upon the plant. But, after a careful review and analysis of that section of the statute we have reached the conclusion that perhaps it meant to impose the license fee upon the plant only as indicated in the closing part of that section. However, the language "of and by every person engaged * * *" contained in that section, might indicate the contrary view stated in the opinion. While we are more strongly inclined to the view that that section of the statute meant to impose a license fee upon the plant and not the person, yet it cannot be said that the statute is free from ambiguity and, therefore, as was stated in that opinion, ambiguity and doubt contained in taxing statutes must be construed more strongly against the taxing authorities and in favor of the taxpayer.

Very clearly there is no ambiguity contained in Section 2554b-114 of the 1938 Acts governing the case at bar. That statute very clearly places the tax upon any and all persons engaged in the business of manufacturing whisky at any distillery in the Commonwealth of Kentucky, and makes no mention of the "plant".

We conclude, therefore, that in view of the contract involved in the Esbeco Company case and the statute under which it was determined, the right conclusion was reached. But, insofar as the opinion might appear or be construed to be authority for appellee's position in the present case that under its lease contract it was not a distiller in the meaning of the statute and, therefore, not liable for the license fees paid for the privilege it exercised, it is hereby to that extent overruled.

We are constrained to the conclusion, therefore, that appellee, as lessee of the distillery plant and premises, was engaged in the business of a distiller of whisky and, therefore, the state authorities properly required appellee to pay the license fees in question.

For the reasons stated the judgment is reversed and remanded for proceedings consistent with this opinion.

Whole court sitting except Judge Perry; Judge Rees dissenting.