

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS



GERALD C. MANN
ATTORNEY GENERAL

Honorable C. R. McNamee                    <u>OVERRULED BY S-165</u>
Director, Rate Division
Railroad Commission of Texas
Austin, Texas

Dear Sir:                                  Opinion No. 0-2954

                                           Re: Whether carriers hauling for
                                               the Federal Government must
                                               charge the rates fixed by the
                                               Railroad Commission.

In your letter of December 13, 1940, you enclose copy of an
opinion written to you on April 13, 1938, by Assistant Attorney
General Albert G. Walker, in effect holding that the Federal
Government may contract for carrier services to be performed
for it, without observing the rates approved by the Railroad
Commission of Texas, where the contract is made pursuant to
advertisement for bids. You now request our opinion as to
whether carriers of intrastate freight for the Federal Government
must demand and receive the charges approved by the Railroad
Commission, or whether such carriers may disregard the rates and
charges approved by the Railroad Commission in making contracts
for the transportation of goods for the Federal Government. Yours
letter indicates that you are particularly concerned with the movement
of freight for the United States Army and we will confine our
opinion to the transportation of goods for the military. This is not
meant to imply that the rule is otherwise as to other arms or
departments of the Federal Government, merely that it may not be.
For instance, it is at least possible that some such arms or
departments may be instructed to comply with state regulations re-
lating to rates and fares. At least, we would not wish to attempt
to give an answer applicable in all instances of transportation for
the Federal Government.

Among other things, Section 8 of Article 1, Constitution of the
United States, provides that the Congress shall have the power to
"provide for the common defense and general welfare of the United
States; . . . To raise and support armies . . .; To provide and
main a navy; . . . To make all laws which shall be necessary and
proper for carrying into execution the foregoing powers, . . ."

Section 5, Title 41, U.S.C.A., reads:

"§ 5. Advertisements for proposals for purchases and contracts for supplies or services for departments of Government. Except as otherwise provided by law all purchases and contracts for supplies or services in any of the departments pf the Government and purchases of Indian supplies, except for personal services, shall be made by advertising a sufficient time previously for proposals respecting the same, when the public exigencies do not require the immediate delivery of the articles, or performance of the service. When immediate delivery or performance is required by the public exigency, the articles or service required maybe procured by open purchase or contract, at the places and in the manner in which such articles are usually bought and sold, or such services engaged, between individuals."

Section 1374, Title 10, U.S.C.A., reads:

"§ 1374. Transportation of Army stores by private parties. All transportation of stores by privateparties for the Army shall be done by contract, after due legal advertisement, except in cases of emergency, which must be at once reported to the Secretary of War for his approval."

Section 561, Title 34, U.S.C.A., provides that "all provisions, clothing, hemp, and other materials of every name and nature, for the use of the Navy, and the transportation thereof, when time will permit, shall, except as otherwise provided by law, be furnished by contract, by the lowest bidder," and then given directions to be followed by the Secretary of the Navy in advertising for bids.

So far as your question is concerned we think it is immaterial whether the contract is made after advertisment for bids or otherwise. The Congress has enjoined upon the officers of the Federal Government the duty to make such contracts, by statutes plainly evidencing an intent for such officers to obtain the most economical transportation possible. The charges to be made for the service is a major factor in such contracts for carrier service. To allow the State to fix the rates and charges for the transportation service involved in these contracts would be to permit it to make the contract in large part. Such would constitute a direct interference with the Federal Government in its discharge of constitutional functions. The principles announced in such cases as Louwein vs. Moody, 12 S.W. (2d) 959; Johnson vs. Maryland, 254 U.S. 51, 41 S. Ct. 16; Metcalf vs. Mitchell, 269 U.S. 514, 70 L. Ed. 384; Panhandle Oil Co. vs. Miss., 277 U.S. 218, 72 L. Ed. 857, are applicable.

In our opinion, carriers may contract with the Federal Government for the transportation of intrastate freight for the military without regard to the rates and fares approved by the Railroad Commission. And this is true whether the contract is made pursuant to advertisement for bids or not.

GRL:GO/cg
APPROVED DEC. 18, 1940
Attorney General of Texas

Yours very truly,
ATTORNEY GENERAL OF TEXAS
By Glenn R. Lewis
Assistant

Approved
Opinion
Committee,
By BWB, Chrm