## Reeves, Commissioner of Revenue, et al. v. Brown-Forman Distillers Corporation.

Dec. 19, 1941.

678

Hubert Meredith, Attorney General, Earl S. Wilson, Assistant Attorney General, and R. Vincent Goodlett for appellants.

Ogden, Galphin, Tarrant & Street for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

This appeal was filed in this court on December 15, of this year. It is from a judgment of the Franklin circuit court rendered on December 12th of the same year, and the question involved is of such extreme emergency as to absolutely require an immediate determination, which should not be postponed beyond the approaching adjournment of this term on December 19th. Therefore, haste on our part is demanded so that the involved question might be determined in time to ward off and avert possible obstructive consequences following delay. Incidentally our time for preparing this opinion (this being Wednesday, December 17th, and the court adjourning on the 19th)—with other official duties requiring our attention—is also brief and hurried action is imposed upon us. In the circumstances we, in disposing of the question involved, will not attempt to discuss collateral issues in which respective counsel engage in their briefs, nor will we employ the usual elaboration in demonstrating the correctness of our views ordinarily employed in our opinions—all because of the brief time within which our task must be performed.

The legal question at issue is this: The United States Government is now engaged in a war, with a lot of bandits at the head of its enemy countries, who seek to destroy civilization and all of the individual liberties of mankind and, particularly, those guaranteed to the citizens of this country under our Bill of Rights. No more worthy undertaking is or could be imagined than is the burden thus thrown upon our Federal Government and its allies. Hence, in preparation for the discharge of that task the United States has acquired a plant at Charlestown, Indiana, for the purpose of manufacturing ammunition to be employed in its war, consisting chiefly of powder. An absolutely necessary article for the manufacture of powder is a high percentage of alcohol. The United States Government has, through the operation of federal statutes heretofore enacted, become the owner of vast quantities of corn out of which

the alcohol that it needs for the manufacturing of powder must be made. Plaintiff and appellee, Brown-Forman Distillers Corporation, was created under the laws of the state of Delaware, but its principal place of business and its chief office is located in the city of Louisville, Kentucky. The purpose of its organization—and the business in which it is engaged—is that of distilling alcoholic liquor, which is done mainly if not entirely within this commonwealth at its plant located in that city. Some time in October, 1941, the United States began negotiations with plaintiff whereby it might procure the services of plaintiff's distilling plant in Louisville in converting its corn to which it had title into 190 proof ethyl or industrial alcohol to be used by it in the manufacture of powder at its various plants engaged in that business, but chiefly the one at Charlestown, Indiana.

Such negotiations culminated in a written contract between plaintiff and the Government on November 19, 1941, which was duly signed and executed by the proper representatives of each party thereto. It prescribed for the conversion of something like 245,000 bushels of the Government's corn into ethyl or industrial alcohol needed by the Government, with stipulations that title to the corn (the article to be converted) would continue to remain in the Government, and that the title to the alcohol after the act of processing conversion was complete would likewise vest and remain in the Government, even without being delivered into the transporting carriage vehicle, which the contract also specifies. The compensation for the use of plaintiff's plant in making the necessary processing required by the Government, including the use of its servants, agents and necessary facilities, was agreed to be 15c per gallon of alcohol so produced. But a stipulation was also inserted to the effect that if plaintiff should be compelled to pay any excise tax, or other charges legally demandable from it by the Commonwealth of Kentucky, as the active agent in performing such conversion, then "the Government shall reimburse the contractor for the amount of such taxes as he shall be required to pay." However, neither party to the contract admitted the existence of the right of the Commonwealth to collect any such charges or taxes in the circumstances, since, if done, the exactions would, in effect as well as actually, be and constitute tax obligations imposed by the state on a governmental ac-

tivity which all parties agree—as well as all courts—may not be done, and which exemption from state taxation statutes is always and everywhere impliedly inserted by construction whether expressly done in the statute itself or not.

This declaratory judgment action was filed by the plaintiff in the Franklin circuit court against the defendants and appellants to obtain a judicial declaration as to whether or not the state in the circumstances could demand and collect from either the plaintiff or the Government the gallonage tax imposed by Section 4214a-13 of Baldwin's 1936 Revision of Carroll's Kentucky Statutes, or any other charge which other sections might impose upon the privilege of distilling spirituous alcoholic liquor. The petition set out (but in more detail) the facts we have stated. Defendants demurred thereto which the trial court overruled. They declined to plead further and the cause was submitted on the allegations of the petition, followed by a judgment that none of the levying statutes of the Commonwealth was "applicable to the production of alcohol for the United States Government under the contract between the plaintiff and the Government, dated November 19, 1941." As a consequence of that conclusion defendants were enjoined from imposing or collecting any such obligations arising from the converting of the Government's corn into the extremely necessitous and emergency article of alcohol, which was stipulated in the contract should be done within 90 days from the effective date of the contract. Complaining of that judgment defendants prosecute this appeal.

The question for determination is a more or less confused, as well as narrow, one in view of the complications arising from metaphysical and technical reasoning of some of the courts before which it was presented, plus their apparent disposition to apply an extremely literal interpretation of the statutes and contracts (creating the shadow and ignoring the substance) involved in the cases with which they were dealing. Such cases, so far as we have been able to ascertain, involved an excise sales tax prevailing in the jurisdiction where the sale of the commodity taxed was the thing or the transaction upon which the burden was placed. The latest case from the Supreme Court of the United States is that of Alabama v. King & Boozer, 62 S. Ct. 43, 44, 86

L. Ed. ... (but not yet published in the U. S. Reports), which was decided on November 10, 1941. That case, like other prior ones, involved a sales tax prevailing in the state of Alabama. The Government entered into a contract for the construction of an army camp on the "cost-plus-a-fixed-fee" plan. It was provided that its contractor should himself buy the material, but the Government had the right of inspection and rejection. In performing that contract the contractor purchased from, and the Government accepted, a lot of lumber from King & Boozer, and the action involved the question as to whether or not they (King & Boozer) were liable to the state of Alabama for the amount of the sales tax assessable against the amount of lumber it sold to the Government's contractor. The state trial court sustained the right of Alabama to collect the involved tax, but that judgment was reversed by the Alabama Supreme Court, 241 Ala. 557, 3 So. (2d) 572, and its judgment was later reversed by the Supreme Court, which sustained the trial court by upholding the right of the state of Alabama to collect the tax. In arriving at that conclusion the Supreme Court was compelled to and did expressly overrule its prior opinions in the case of Panhandle Oil Company v. State of Mississippi, 277 U. S. 218, 48 S. Ct. 451, 72 L. Ed. 857, 56 A. L. R. 583, and also in the case of Graves v. Texas Company, 298 U. S. 393, 56 S. Ct. 818, 80 L. Ed. 1236.

The Panhandle Company case was one involving an excise gasoline tax; whilst, as we have seen, the more recent Alabama case, in analyzing the ramifications produced by the involved statute, as applied to the terms of the Government's contract, came to the conclusion that the thing or transaction taxed in that case was neither property of the Government, nor any taxable right in which it was engaged, and, therefore, the claimed immunity from the payment of the tax was not sustainable. The determination of the question involved in that case was bottomed solely on the determinations of the court as to the created status evolved from a literal interpretation of both the statute levying the tax, and the obligations of the contract between the Government and its contractor. In that case the thing taxed was the sale of the lumber by the dealer therein, and which was made and done at a time when he owned the undisputed title to the lumber.

In the Mississippi case the thing taxed was gasoline. It was sold to the consumers by a dealer, the latter of whom was compelled to pay the tax at the time designated in the statute, but which he might pass on to the consumer by enhancing the price to the extent of the tax. The consumer in that case was a contractor for the construction of some governmental facility. The Mississippi Supreme Court held that the gallonage tax on the sale of gasoline was collectible, 147 Miss. 663, 112 So. 584, but the Supreme Court of the United States reversed its holding because it concluded that the effect produced was, in substance, the exaction of tribute by the state of Mississippi from the Government, which, as we have said, is everywhere conceded may not be done, either in the form of taxation or otherwise.

As we view the instant situation, there are many material features present which were entirely absent in all of the cases to which our attention has been called, or which we have been able to find, including, of course, the more recent Alabama case from the Supreme Court of the United States. Here, the Government owned corn. An emergency arose whereby it became necessary for it to obtain another article absolutely essential to the warding off of the emergency under which the Government was laboring. In that situation the saving of time was a most important consideration. Much loss of valuable time would be entailed if the Government undertook to first construct its own distilling plant with which to properly process the act of converting its corn into its imperatively necessitous article of alcohol. In that situation it entered into a contract with one already equipped with the necessary plant and facilities to immediately embark in the undertaking of effectuating such conversion as speedily as possible and which the Government required should be done and completed within 90 days. Our conclusion is that the transaction was, in substance and effect, the temporary leasing by the Government of the plant of the owner, as well as his service force, to be employed in effectuating and carrying out the required conversion of the lessee's corn into another substance to be also owned by it, which in this case was alcohol—the lease to continue until the requisite processing was completed, not to exceed 90 days.

We are not without authority for that interpretation. In the case of Logan, Auditor. v. Greenbrier Dis-

tilling Company, 286 Ky. 319, 150 S. W. (2d) 673, there was presented for determination the effect of an almost completely analogous transaction whereby the plaintiff and appellee in that case contracted with the distilling company of The George T. Stagg Company of Frankfort, Kentucky, to manufacture for plaintiff therein a certain quantity of liquor at its Frankfort plant and to brand it with the mark of plaintiff. The actual manufacturer (The George T. Stagg Company) was to furnish all the material, labor and other service, including ingredients necessary to carry out the obligation of the contract. We held that the plaintiff in that case was engaged itself within the terms of our statute, supra, in the manufacturing of the liquor it had contracted for and, therefore, liable for the tax imposed by the statute. That case reviewed our prior ones of Shannon, Auditor, v. Esbeco Distilling Corporation, 275 Ky. 51, 120 S. W. (2d) 745, and Esbeco Distilling Company v. Shannon, 278 Ky. 689, 129 S. W. (2d) 172.

The defendants in the Greenbrier Distilling Company case relied upon our holding in the two Esbeco cases, but in the Greenbrier Distilling Company case we differentiated the Esbeco cases and overruled the relied on defense of appellee in the Greenbrier Distilling Company case, which was (as had been determined in the Esbeco Company cases) that the tax was levied on the distilling plant and not upon the business of the manufacturing done at the plant. The latter holding made in the Esbeco cases was overruled in the Greenbrier Distilling Company case [286 Ky. 319, 150 S. W. (2d) 678], the opinion saying: "But, insofar as the opinion [Esbeco cases] might appear or be construed to be authority for appellee's position in the present case that under its lease contract it was not a distiller in the meaning of the statute and, therefore, not liable for the license fees paid for the privilege it exercised, it is hereby to that extent overruled."

That holding was a determination by this court that in the circumstances of that case the one for whom temporary distilling was done at the plant of and by a manufacturer of alcoholic spirits was himself engaged as a manufacturer of such product and liable for the state's tax demands levied upon such engagements. The facts in that case were very much more conducive toward an opposite conclusion than they are in the in-

stant one. The person for whose benefit the distilling was done in the Greenbrier Distilling Company case possessed the title to nothing entering into the final product which it agreed to pay for when produced at the agreed price. But in this case, as we have seen, the construed lessee (the Government) owned the material to be converted into the final product. It retained the title thereto throughout all of the time required for the execution of the contract, and it also became vested with the title to the converted product as soon as it came into existence. Therefore, if the Greenbrier Distilling Company under the facts of that case became a temporary lessee, and responsible for the tax demands of Kentucky for the liquor that was manufactured under its contract, a fortiori, would the Government in this case become and be a temporary manufacturer in converting its own corn into its more pressingly needed article of alcohol. Therefore, all activities, utensils and plants, as well as service which it leased to accomplish that purpose had the effect of making it, as lessee of plaintiff, the manufacturer of the alcohol, and the one who would be liable for the taxes imposed by law on such engagements, except for the immunity it enjoys against the right of a state to exact such demands from it.

Whatever, therefore, may be the correct rule emerging from statutory complications of statutes and contracts involving any sort of sales tax, as affected by the same character of contractual ones, is not controlling in a case which is bereft of such confusion. In such sales tax cases the statutory demand became wrapped up with and a part of the sale price upon which the tax was levied against the seller, and by the time the burden reached the Government it had become so absorbed that it was impossible to say that the Government occupied a position to insist on its immunity. No such conditions are met with in the case before us and, we repeat, that the apparent contrary rule, as announced in the Alabama case by the Supreme Court, involving sales tax questions should not be applied here.

In conclusion—as was specifically held in the Greenbrier Distilling Company case—and by all text writers and prior cases from all courts—taxing statutes should be liberally construed in favor of the taxpayer and the burden should not be imposed except by clear and explicit language. If ambiguities exist whereby doubts are

created they, under the rule, should be resolved in favor of the taxpayer. If any possible favoritism should be shown in applying that rule it would appear that it should be done in this case so as to save the Government, and leave in its treasury, at least $65,000 additional costs for the processing of its own product into an article imperatively required in discharging the huge task now resting upon it. No shadowy or extreme technical considerations should be permitted to obstruct or defeat an interpretation exonerating the Government from the additional burden imposed by the tax, when a plausible and logically fortified opposite conclusion would serve to relieve it therefrom.

More extended discussion of the question and of the cases dealing therewith would, no doubt, fortify our conclusions, but for the reasons stated at the beginning of this opinion we will refrain from any attempt to do so, since the reader may dissipate any entertained doubts of the soundness of our conclusion by consulting the statutes and the opinions to which we have referred without our extending this opinion to enable him to do so.

Wherefore, for the reasons stated, the judgment is affirmed.

The whole Court sitting.