

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-4731
Re: Whether tax levied by Article
7047, Sec. 41a, V. A. C. S., as
amended by Art. 12, H. B. No. 8,
47th Leg., accrues on sales of
cement to Defense Plant Corpora-
tion where the cement is turned
over to a contractor by said
corporation for use in Federal
construction work.

We have your letters of August 4, 1942, and August 17,
1942, and your enclosures. You request the opinion of this depart-
ment as to whether the tax on cement distributors, imposed by Arti-
cle 7047, Sec. 41a, as amended by Article 12 of H. B. 8, 47th Leg-
islature, accrues upon the sale of cement to the Defense Plant
Corporation, where the cement is subsequently delivered by such
corporation to its "cost-plus contractors" for use in defense plant
construction. We quote from your letter of August 4, 1942:

"It is my understanding that the Defense Plant
Corporation issues purchase order to the cement manu-
facturer showing that they are acting by and through
the contractor.

"One of the cement manufacturers in this State
contends that this is a direct sale to the United
States Government and, therefore, not subject to the
Texas state cement tax. * * *."

Article 7047, Section 41a, as amended by Article 12,
House Bill 8, 47th Legislature, reads in part as follows:

Honorable George H. Sheppard, Page 2

"Cement Distributors. There is hereby imposed
a tax of two and one-half (2½) cents on the one hun-
dred (100) pounds, or fractional part thereof, of
cement on every person in this state manufacturing or
producing in and/or importing cement into this state,
and who thereafter distributes, sells or uses; pro-
vided however, no tax shall be paid except on one sale,
distribution or use. The person liable for said tax
is hereby defined as a 'distributor' * * *." (Emphasis
ours)

The statute, on its face, and in plain terms lays the
tax upon the person who manufacturers or produces in, or imports
cement into this state and thereafter distributes, sells or uses
it. The tax is measured by the amount of cement distributed, sold
or used, after such manufacture, production or importation and ac-
crues at the time of such distribution, sale or use. No person,
other than the "distributor," as defined in the statute, ever be-
comes liable for the payment of the tax. It is an occupation tax
statute, and there is no doubt of the Legislative intent: "The
statute levies a tax for each 100 pounds of cement on those manu-
facturing and importing this commodity." Trinity Portland Cement
Co. vs. State, 144 S. W. (2d) 329 (writ of error refused).

In our opinion No. O-3079 we held the distributor liable
for the tax and held that the tax accrued upon sales of cement by
the distributor to a cost-plus contractor who was reimbursed for
the cost of materials by a government instrumentality. At the
date of that opinion, however, the United States Supreme Court had
not overruled, though it had limited its decisions in the cases of
Panhandle Oil Co. vs. State, 277 U. S. 218, 72 L. Ed. 857, 48 Sup.
Ct. 451; Indian Motorcycle Co. vs. U. S., 283 U. S. 70, 75 L. Ed.
1277, 51 Sup. Ct. 601; and Graves vs. Texas Company, 298 U. S. 393;
80 L. Ed. 1236, 56 Sup. Ct. 818. That opinion was based on the
principle announced in Trinityfarm Co. vs. Grosjean, 291 U. S. 466,
514 Sup. Ct. 469, 78 L. Ed. 918, that even though a state tax on an
independent contractor increased the ultimate cost to the government,
unless a direct burden were placed on the government, the tax would
not be unconstitutional as infringing the governmental immunity from
taxation. Despite the Trinityfarm case, however, in view of the
holding in the case of Panhandle Oil Co. vs. State, supra, that an
occupation tax on gasoline distributors, based on the amount of
gasoline sold, could not, constitutionally, be collected from a

Honorable George H. Sheppard, Page 3

gasoline distributor who sold directly to the Federal Government, it became necessary for us to determine whether or not the purchaser of cement was an independent contractor or whether he purchased as an agent of the government.

Since the date of our opinion No. O-3079, however, the Panhandle Oil Company case and others of like import have been definitely overruled. State of Alabama vs. King & Boozer, 62 Sup. Ct. 43; Curry vs. United States, 62 Sup. Ct. 48. We think these cases are directly in point. In the King & Boozer case the court had before it an Alabama statute which levied a sales tax of 2 per cent of the gross retail sales price of tangible personal property on the retailer, and made it his duty to add such sales tax to the sales price and collect it from the purchaser. Sales were made to a "cost-plus contractor" who was engaged in constructing an army camp under contract with the United States Government. In holding the tax constitutional and collectible as against such contractor the court said:

"Congress has declined to pass legislation immunizing from state taxation contractors under "cost-plus" contracts for the construction of governmental projects. Consequently the participants in the present transaction enjoy only such tax immunity as is afforded by the Constitution itself, and we are not now concerned with the extent and the appropriate exercise of the power of Congress to free such transactions from state taxation of individuals in such circumstances that the economic burden of the tax is passed on to the national government. The government, rightly, we think, disclaims any contention that the Constitution, unaided by congressional legislation, prohibits a tax exacted from the contractors merely because it is passed on economically, by the terms of the contract or otherwise, as a part of the construction cost to the Government. So far as such a non-discriminatory state tax upon the contractor enters into the cost of the materials to the Government, that is but a normal incident of the organization within the same territory of two independent taxing sovereignties. The asserted right of the one to be free of taxation by the other does not spell immunity from paying the added costs, attributable to the taxation of those who furnish supplies to the Government and who have been granted no tax immunity. So far as a different

view has prevailed, see Panhandle Oil Co. vs. State ex rel, Knox, supra; Graves vs. Texas Co., supra, we think it no longer tenable." (Emphasis ours)

The case of Curry vs. United States, supra, involved the same question presented in the King & Boozer case, the only difference being that the tax involved in the Curry case was a use tax rather than a sales tax. The court made the following pertinent statement:

"For the reasons stated at length in our opinion in the King & Boozer case we think that the contractors, in purchasing and bringing the building material into the state and in appropriating it to their contract with the Government, were not agents or instrumentalities of the Government; and they are not relieved of the tax, to which they would otherwise be subject, by reason of the fact that they are Government Contractors. If the state law lays the tax upon them rather than the individual with whom they enter into a cost-plus contract like the present one, then it affects the Government, like the individual, only as the economic burden is shifted to it through operation of the contract." (Emphasis ours)

Our attention has been called to the case of Federal Land Bank vs. Bismarck Lumber Co., 62 Sup. Ct. 1, where the court had under consideration a North Dakota statute levying a 2 per cent tax upon gross receipts from sales of property. The Federal Farm Loan Act exempted the bank from Federal, State and local taxation, with certain exceptions. The court held that the sales tax was not payable on property sold to the bank, because the bank was exempt, by statute, from the payment of the tax. The tax there considered was not upon the seller, but upon the purchaser. Though the statute, in terms, declared the vendor to be the taxpayer, it required him to add to the sale price the amount of the tax and to collect the tax from the purchaser. It further made the amount of the tax a debt of the purchaser to the vendor until paid, thereby placing the legal incidence of the tax directly on the purchaser. Our statute, on the contrary, makes no such requirement. The tax is, in terms, laid on the Vendor. He alone is liable for the payment of the tax to the State, and no one else ever becomes liable for payment of the tax unless by virtue of contract with him. Our courts have determined that the legal incidence of the tax is on the vendor. Trinity Portland Cement Co. vs. State, 144 S. W. (2d) 329 (writ of error refused).

This department so held in our opinion No. 0-3079, and we presently hold that the legal incidence of the cement distributors' occupation tax is upon the person who manufactures or produces cement in this state or who imports it into this state and thereafter sells, distributes or uses it; that the tax is measured by the amount of cement so sold, distributed or used, and that the tax accrues at the time of such sale, distribution or use. Under the authority of the cases of Alabama vs. King & Boozer, 62 Sup. Ct. 43 and Curry vs. United States, 62 Sup. Ct. 48, we hold that the fact that the sale may be made directly to the United States Government or to an instrumentality thereof is immaterial, and that the tax accrues and the vendor becomes liable therefor upon the sale of the cement.

In thus holding we are not unmindful of the fact that Section 610, Title 15, U.S.C.A., specifically exempts the Defense Plant Corporation from the payment of sales or use taxes. We are convinced, however, that such statute does not, and does not undertake to exempt from taxation all persons who deal with Defense Plant Corporation. The only way Defense Plant Corporation could ever become liable for the cement distributors' tax levied by our statute would be through contract with the distributor. And while our holding here would be the same, in any event, it is interesting to note that the evidence furnished us forecloses any contention that in this particular instance the tax would ever become a burden on the Federal Government or any of its instrumentalities because as pointed out in the excellent brief submitted by Messrs. Andrews, Kelly, Kurth & Campbell, the contract with the distributor specifically provides that no sales or use tax shall be included in the cement price quotations, and that no such tax will be paid by Defense Plant Corporation. Thus, neither by our statute nor by the contract, in this instance, does the tax ever become the liability of nor payable by any person other than the cement distributor. Clearly he is not an instrumentality of the Federal Government and clearly he is liable for the tax.

We return herewith the documents handed to us for consideration in connection with this opinion. We express our appreciation for the brief, above referred to, as well as for the documentary evidence furnished, all of which has been very beneficial to us.

Trusting that we have fully answered your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By *Fowler Roberts*

Fowler Roberts
Assistant

APPROVED SEP 4, 1942

*Gerald C. Mann*

ATTORNEY GENERAL OF TEXAS

FR:ej

APPROVED
OPINION
COMMITTEE
BY *BWB*