

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. 0-5260

Re: Whether tax levied by Section
1, Chapter 184, Article X,
Acts 1941, 47th Legislature,
p. 269, accrues on proceeds
of sales of radios, cosmetics
and playing cards made at re-
tail to the Federal Government,
and related questions.

In your letter of April 27, 1943, you request our
opinion on the following facts:

"I am attaching hereto letter I received
from Joske Bros. Co., San Antonio, with copies
of letters from Captain E. G. Brown, Finance Of-
ficer for Randolph Field, relative to the levy
of the 2% tax under Section 1, Article X, of
House Bill 8, Regular Session of the Forty-
seventh Legislature, and will thank you to ad-
vise this department whether Joske Bros. Co. will
be subject to the tax from the proceeds of sales
made by them to the Federal Government on commod-
ities covered by Section 1, Article X, of House
Bill 8.

"This department has directed Joske Bros.
Co. that they are liable for the tax."

Joske Bros'. letter contains, in part, the follow-
ing facts:

Honorable George H. Sheppard, page 2

"We are continuing to experience a great deal of difficulty in connection with the collection of taxes due under Article X of House Bill 6 on sales we make to the United States Government.

"The Government orders are submitted to us, we fill them, and bill them for the amount of the sale including the tax. In every instance they forward us a check in payment for the bill less the amount of the tax and enclose with their check a tax exemption certificate. We repeatedly advised them that we have secured from you a ruling to the effect that the state cannot accept these tax exemption certificates.

"We have a very extensive file of correspondence on this subject. The position taken by the Government in all of these letters is the same. Many of these matters are still unsettled. We are still maintaining the position that the amount of the tax must be paid, since we cannot submit the tax certificates to your office.

"At the suggestion of Captain E. G. Brown, Finance Officer for Randolph Field, a letter was written by him to the Comptroller General of the United States on this subject. I am enclosing a copy of the letter which Captain Brown sent to me on March 16th advising that the matter had been referred to the Comptroller General, and, also, his letter of April 1st addressed to me advising me of the decision reached after he had received his reply from the Comptroller General of the United States."

Captain Brown's letter of April 1, 1943, is as follows:

"With reference to our telephone conversation today, we will proceed with payment of your invoice under date of February 16, 1943, for the amount of invoice less tax.

Honorable George H. Sheppard, page 3

"Your attention is invited to decision
A-51249, October 4, 1933 of Vol. 13, page 91
of Decisions of Comptroller General, which
provides that any state '. . . is without
authority to tax the United States on such
purchases as may be necessary for the conduct
of the business of the Federal Government.'"

Section 1, Chapter 184, Article X, Acts 1941,
47th Legislature (codified by Vernon as Article 7047l) provides:

"Radios, cosmetics, cards; luxury excise
tax; penalty for making false report or failure
to report.

"Section 1. Each person, partnership,
association, or corporation selling at retail
new radios or new cosmetics, shall make quart-
erly on the first days of January, April, July
and October of each year, a report to the Comp-
troller, under oath of the owner, manager, or
if a corporation, an officer thereof, showing
the aggregate gross receipts from the sale of
any of the above-named items for the quarter
next preceding; and shall at the same time pay
to the Comptroller a luxury excise tax equal to
two (2) per cent of said gross receipts as shown
by said report.

"Every person, partnership, association, or
corporation, selling at retail, playing cards
shall make quarterly report as provided above
showing the total number of packs or decks of such
cards sold during the preceding quarter, and shall
at the same time pay to the Comptroller a luxury
excise tax of five (5) cents per pack or deck of
such playing cards so sold.

"Nothing herein shall be construed so as to
require payment of the tax on gross receipts here-
in levied more than once on the proceeds of the
sale of the same article of merchandise. A retail
sale as used herein, means a sale to one who buys

Honorable George H. Sheppard, page 4

> for use or consumption, and not for resale.
> Gross receipts of a sale means the sum which
> the purchaser pays, or agrees to pay for an
> article or commodity bought at retail sale."

The opinion of the Comptroller General, referred to in Captain Brown's letter, was dated October 4, 1933, and cited as authority Panhandle Oil Company v. State of Mississippi, 277 U. S. 218, 72 L. Ed. 857, 48 S. Ct. 451, 56 A. L. R. 483. The correctness of the Panhandle case "is now open to serious question." The tax involved in Comptroller General's decision was a retail sales tax on the consumer or purchaser --not a vendor's tax (as we have here), measured by gross receipts. This Department held in opinion O-4403A that the tax in question was a gross receipts tax, not a sales tax, and was not levied against the retail purchaser.

Panhandle Oil Company v. Mississippi, supra, involved sales directly to the United States for the use of its Coast Guard Fleet in service in the Gulf of Mexico and its Veterans' Hospital at Gulfport. It arose under a law of the State of Mississippi which provided that "any person engaged in the business of distributing gasoline, or retail dealer in gasoline, shall pay for the privilege of engaging in such business an excise tax of 1¢ (one cent) per gallon upon the sale of gasoline. . ." The oil company did not pay taxes on such sales to the United States, and the State brought suit. The company defended on the ground that this statute, and its amendments, if construed to impose taxes on such sales, was repugnant to the Federal Constitution. That contention was sustained in the trial court, and the state appealed. The Supreme Court of the United States held that the State was not entitled to collect the tax from the Panhandle Oil Company upon the gasoline sold by it to the Federal Government.

Mr. Justice Butler, who wrote the majority opinion of the Court, said:

> "The right of the United States to make
> such purchases is derived from the Constitution.

Honorable George H. Sheppard, page 5

The petitioner's right to make sales to the
United States was not given by the state and
does not depend on state laws; it results
from the authority of the national govern-
ment under the Constitution to choose its
own means and sources of supply. While
Mississippi may impose charges upon petitioner
for the privilege of carrying on trade that is
subject to the power of the state, it may not
lay any tax upon transactions by which the
United States secures the things desired for
its governmental purposes.

"The validity of the taxes claimed is
to be determined by the practical effect of
enforcement in respect of sales to the govern-
ment. Wagner v. Covington, 251 U. S. 95, 102,
64 L. Ed. 157, 167, 40 Sup. Ct. Rep. 93. A
charge at the prescribed rate is made on account
of every gallon acquired by the United States.
It is immaterial that the seller and not the
purchaser is required to report and make payment
to the state. Sale and purchase constitute a
transaction by which the tax is measured and on
which the burden rests. The amount of money
claimed by the state rises and falls precisely
as does the quantity of gasoline so secured by
the Government. It depends immediately upon
the number of gallons. The necessary operation
of these enactments when so construed is directly
to retard, impede and burden the exertion by the
United States, of its constitutional powers to
operate the fleet and hospital. M'Culloch v.
Maryland, supra, 436 (4 L. Ed. 608); Gillespie v.
Oklahoma, supra, 505 (66 L. Ed. 340, 42 Sup. Ct.
Rep. 171); Jaybird Min. Co. v. Weir, 271 U. S.
609, 613, 70 L. Ed. 1112, 1114, 46 Sup. Ct. Rep.
592. To use the number of gallons sold the
United States as a measure of the privilege tax
is in substance and legal effect to tax the sale.
Western U. Teleg. Co. v. Texas, 105 U. S. 460,
26 L. Ed. 1067; Frick v. Pennsylvania, 268 U. S.
473, 494, 69 L. Ed. 1058, 1064, 42 A. L. R. 316,

Honorable George H. Shepard, page 6

45 Sup. Ct. Rep. 603. And that is to tax the United States--to exact tribute on its transactions and apply the same to the support of the state.

"The exactions demanded from petitioner infringe its right to have the constitutional independence of the United States in respect of such purchases remain untrammeled. Osborn v. Bank of United States, 9 Wheat. 738, 867, 6 L. Ed. 204, 234; Western U. Teleg. Co. v. Texas, supra. Cf. Terrace v. Thompson, 263 U. S. 197, 216, 6 L. Ed. 255, 274, 44 Sup. Ct. Rep. 15. Petitioner is not liable for the taxes claimed."

Justices Holmes, Brandeis, Stone and McReynolds dissented.

In Federal Land Bank of St. Paul v. De Rochford, 287 N. W. 522, the Supreme Court of North Dakota had before it for decision the validity of a non-discrimination license tax upon dealers in motor vehicle fuel, computed at the rate of 3 cents per gallon used and sold by them, and subject to being added to the sales price, when including sales of gasoline by a dealer to a Federal Land Bank for use in carrying out its activities in the State of North Dakota.

The Bank contended that the tax could not be constitutionally imposed upon the dealer for any motor vehicle fuel which it purchased from him for the purpose of carrying on its authorized activities within the State, and that consequently the dealer might not change the amount of such tax as a part of the price. The defendants, DeRochford and the State Auditor, on the other hand, contended that the motor vehicle fuel sold by DeRochford to the Federal Land Bank must be included in computing the tax and consequently DeRochford might include the amount of such tax in the price.

The Court said:

"The sole question presented for determination on this appeal is whether the State

Honorable George H. Sheppard, page 7

of North Dakota has the right to impose upon
a licensed dealer in motor vehicle fuel a
license tax of three cents per gallon upon
motor vehicle fuel sold by such dealer to a
Federal Land Bank for use in automobiles owned
by said Bank and operated by it incidental to
its activities in the State."

". . . .

"The decisions of the United States Supreme
Court are binding upon this Court and definitely
establish, (1) that a Federal Land Bank is an
instrumentality of the national government, created
by Congress, acting within its constitutional powers,
to perform authorized governmental functions, and (2)
that such bank is constitutionally endowed with the
same immunity from state taxation, that the national
government itself would have been endowed with, if
it had engaged in such activity directly."

". . . .

"In the Act providing for the establishment
of Federal Land Banks (Federal Farm Loan Act)
there is a clear intimation that real estate ac-
quired by a Federal Land Bank in the course of
its operations under the Act shall be subject
to taxation; and there is a specific declaration
that 'every Federal land bank . . . including the
capital and reserve or surplus therein and the
income derived therefrom, . . . first mortgages
executed to Federal land banks, . . . and farm
loan bonds . . . and the income derived therefrom
shall be exempt from . . . State, municipal and
local taxation.'

"It is reasonable to assume that when Con-
gress said that a state might not tax a Federal
Land Bank, its capital, reserve or surplus, or
the income derived therefrom, or first mortgages
executed to the Bank, or farm loan bonds, or in-
come derived therefrom, it had in mind direct and

discernible taxes, and that it did not have
in mind taxes imposed upon and collected from
other persons with whom the Bank might trans-
act business, which might indirectly result
in some slight increase in the operating ex-
penses of the Bank. The tax in question here
is not a tax upon a Federal Land Bank, or upon
its capital, reserve or surplus, or the income
derived therefrom. Neither is it a tax upon
mortgages executed to such Bank, or upon farm
loan bonds, or upon the income derived there-
from. The tax is one upon a dealer in motor
vehicle fuel, who has applied for, and who has
been granted, a license, under the laws of this
State, to engage in business as a dealer in
motor vehicle fuel.

"The tax involved here is a tax imposed
on dealers for the privilege of engaging in the
business of selling motor vehicle fuel, and the
amount of the tax is measured by the number of
gallons 'used and sold' by the dealer. It is
not a tax upon a Federal Land Bank or upon any
function which such Bank is authorized to per-
form. It is not a tax upon any of the powers
with which the Bank is vested. The Bank may
exercise every function and perform every act
that it was created to exercise and perform
without one cent of its funds being expended or
one cent of its profits being taken away because
of this tax. The tax cannot be laid directly
upon any activity of the Bank unless it engages
in business as a licensed dealer of motor vehicle
fuel in this State, and the Bank was not created
for the purpose of engaging in such business.
The only way in which the funds of the Bank may
be expended, even indirectly, in the payment of the
tax will be if the Bank purchases motor vehicle
fuel from a dealer who includes the amount of the
tax in the sales price. But if the operating ex-
penses of the Bank are increased because of the
imposition of the tax upon a dealer from whom the
Bank purchases motor vehicle fuel, that effect is
only incidental and remote and cannot be said to

be a tax upon the Bank, its capital, reserve or surplus, or upon any of the operations of the Bank. Every tax laid upon a dealer will, of course, to some extent be reflected in the price which he charges for the commodity which he sells.

". . . .

". . .the Supreme Court of the United States has held that an occupation tax measured by gross income, where imposed by a state upon a contractor with the United States, is not invalid as a tax upon the Federal Government and its operations, even though the imposition of the tax may increase the cost to the government. James v. Dravo Contracting Co., 302 U. S. 134, 160, 58 S. Ct. 208, 82 L. Ed. 155, 172, 14 A. L. R. 318; Alward v. Johnson, 282 U. S. 509, 51 S. Ct. 273, 75 L. Ed. 496, 75 A. L. R. 9.

". . . .

"The tax is general and non-discriminatory. The law imposes the same license tax upon all motor vehicle fuel sold by a licensed dealer without regard to whom the purchaser may be.

". . .The law does not require that the tax be passed on to the purchaser. The dealer may pay part or all of the tax on all sales or on any sale; but the law says 'every dealer paying such license tax or being liable for the payment thereof, shall be entitled to charge and collect the sum of three cents per gallon, on such motor vehicle fuel sold by him, as a part of the selling price thereof.'

"In this case the dealer (DeRochford) fixed the price which he charged for the gasoline that he sold to the Land Bank with the tax in mind, that is, in fixing the price he added the amount

of the tax he would be required to pay to the
State. But the Land Bank was not required to take
the gasoline from DeRochford; it could take it or
leave it. If it thought the price too high, it
did not have to purchase. If DeRochford had seen
fit to increase the price to the Land Bank over
what he charged the public at large, the Bank
could not have compelled him to sell to it at a
lesser price.

"....

"If it were not for the decision of the
Supreme Court of the United States in Panhandle
Oil Co. v. Mississippi ex rel. Knox, supra, we
should not think there could be any basis under
the rule announced in McCulloch v. Maryland for
a claim that the imposition by the State of the
tax in question here upon a licensed dealer in
motor vehicle fuel of a license tax measured by
the amount of motor vehicle fuel sold by him
would be repugnant to the Constitution of the
United States as to such amount of the tax as
is based upon motor vehicle fuel sold by him
to a Federal Land Bank; but, that decision holds
to the contrary; and if the rule of that decision
still prevails the license tax prescribed by the
laws of this State cannot be constitutionally
imposed upon DeRochford as to the gasoline he
sold to the Federal Land Bank.

"....

"There are no material differences be-
tween the laws of this State under which the
controversy here arose and the laws of Miss-
issippi that were involved in Panhandle Oil
Company v. Mississippi ex rel. Knox. If what
the Court said and held in that decision is
still in full force and effect, and binding
as an authority upon this Court, it would, we
think, be decisive here. If the tax involved
in that case were unconstitutional it would
seem to follow that the tax involved in this
case is likewise unconstitutional. We are of

Honorable George H. Sheppard, page 11

the view, however, that decisions of the
Supreme Court of the United States made
after the rendition of the decision in
Panhandle Oil Company v. Mississippi ex rel.
Knox have so effectively removed the supports
on which that decision was said to rest that
the decision can no longer be said to be bind-
ing as an authority upon the courts of the
States. It is true the decision has not been
directly overruled; but subsequent decisions
of the Supreme Court of the United States es-
tablish a rule so inconsistent with the hold-
ing in that case, that the decision, in effect,
has been overruled. There is no magic in the
word 'overruled'. When a court expressly
overrules a decision upon which a later decis-
ion is predicated, it, of necessity, also
overrules so much of the later decision as is
predicated upon the decision that is overruled.

"The decision of the Court in Panhandle
Oil Company v. Mississippi ex rel. Knox evoked
vigorous dissent from four members of the Court.
While it has been cited in many cases and was
followed and made the basis for the decision
in Graves v. Texas Company, 298 U. S. 393, 56
S. Ct. 818, 80 L. Ed.1236, it has been disting-
uished in many subsequent cases (Wheeler Lumber
Bridge & Supply Co. v. United States, 281 U. S.
572, 50 S. Ct. 419, 579, 74 L. Ed. 1047, 1051;
Alward v. Johnson, 282 U. S. 509, 514, 51 S. Ct.
273, 75 L. Ed. 496, 499, 75 A. L. R. 9; Liggett
& Myers Tobacco Co. v. United States, 299 U. S.
383, 57 S. Ct. 239, 81 L. Ed. 294; James v.
Dravo Contracting Co., 302 U. S. 134, 151-152,
58 S. Ct. 205, 82 L. Ed. 155, 166, 114 A. L. R.
318), and, in James v. Dravo Contracting Company,
supra, the Court declared that it must be deemed
limited to its particular facts. 302 U. S. at
page 151, 58 S. Ct. 208, 82 L. Ed. at page 166,
114 A. L. R. 318.

Honorable George H. Sheppard, page 12

"Among the decisions cited by the Court
in Panhandle Oil Co. v. Mississippi ex rel.
Knox, in support of its holding that the tax
there involved operated as an unconstitutional
burden upon, and interference with, the exercise
of national power, are Dobbins v. Erie County,
16 Pet. 435, 10 L. Ed. 1022, and Gillespie v.
Oklahoma, 257 U. S. 501, 42 S. Ct. 171, 66 L.
Ed. 338. Particular attention was called to the
strictness of this rule as emphasized in Gillespie
v. Oklahoma, 257 U. S. 501, 42 S. Ct. 171, 66 L.
Ed. 338. In Gillespie v. Oklahoma, the Court held
that the doctrine of immunity inhibited a state
from imposing a tax on the net income derived by
a lessee from leases of restricted Indian Lands
made pursuant to Congressional authority. In
Helvering v. Mountain Producers' Corp., 303 U. S.
376, 58 S. Ct. 623, 82 L. Ed. 907, the Court,
after careful re-examination of the question,
held the decision in Gillespie v. Oklahoma to be
'out of harmony with correct principle' and de-
clared Gillespie v. Oklahoma to be overruled.

". . . .

"Mr. Justice Butler, author of the opinion
in Panhandle Oil Company v. Mississippi ex rel.
Knox, wrote vigorous dissents in Helvering v.
Mountain Producers' Corp., in Helvering v.
Gerhardt, and in Graves v. New York. In his
dissenting opinion in Helvering v. Mountain Pro-
ducers' Corp., he stated that with Gillespie v.
Oklahoma, there 'necessarily' went 'a long line
of decisions of this and other courts', and char-
acterized the result of the decision of the court
as constituting a 'sweeping . . . change of con-
struction of the Constitution'. 303 U. S. at
pages 390, 391, 58 S. Ct. at page 630, 82 L. Ed.
at page 917. In his dissenting opinion in Helvering
v. Gerhardt, he said:—'In substance, as well as
in the language used the decision just announced
substitutes for that doctrine (the doctrine of

Honorable George H. Sheppard, page 13

absolute immunity) the proposition that, although the federal tax may increase cost of state governments, it may be imposed if it does not curtail functions essential to their existence. Expressly or sub silentio, it overrules a century of precedents.' 304 U. S. at page 429, 430, 58 S. Ct. at page 980, 82 L. Ed. at page 1442.

'"The sweeping change of construction of the constitution', and the application of the controlling principles, announced in the decisions that decreed such change, seem to us to leave no substantial basis for the rule announced in Panhandle Oil Company v. Mississippi ex rel. Knox. It seems to us rather that that decision, in effect, has been overruled.

". . . .

"The imposition of the tax is not an exercise or an attempt to exercise by the state of any power 'by taxation or otherwise, to retard, impede, burden, or in any manner control the operations of' (4 Wheat. at pages 429-437, 4 L. Ed. at pages 607-609) The Federal Farm Loan Act. If regard 'be had to substance and direct effects', and 'merely theoretical conceptions of interference with the functions of government' be laid aside 'there is no sufficient ground for holding that the effect upon the government is other than indirect and remote.' 303 U. S. at pages 386, 387, 58 S. Ct. at pages 627, 628, 82 L. Ed. at page 914. The imposition of the tax upon a dealer for gasoline sold by him to a Federal Land Bank 'neither precludes nor threatens unreasonably to obstruct any function essential to the continued existence' of the Bank. Neither does it operate to control, hinder, or impede the Bank in the performance of any service that it was established to perform for the government. If any of the burden of the tax that is imposed upon the dealer indirectly reaches the Land Bank that

Honorable George H. Sheppard, page 14

'is but a necessary incident to the coexistence within the same organized government of the two taxing sovereigns, and hence is a burden the existance of which the Constitution presupposes.' 304 U. S. at page 424, 58 S. Ct. at page 977, 82 L. Ed. at page 1439."

In Western Lithograph Co. v. State Board of Equalization (1938) 11 Cal. (2) 156, 78 Pac. (2d) 731, 117 A. L. R. 838, there was involved a nondiscriminatory state tax, expressly imposed upon the privilege of selling tangible personal property at retail, and measured by the seller's gross receipts. The statute also provided for the collection of the tax, in so far as possible, by the retailer from the consumer, but the act itself made the tax the direct obligation of the retailer. In holding the tax applicable to a sale to a national bank (which the Court assumed to be an instrumentality of the United States, and, as such, not subject to a State tax without the consent of Congress), the Supreme Court of California said:

"Unquestionably the act is nondiscriminatory. It operates upon all alike in the same class, and does not result in exacting more from the federal instrumentality than is paid by other individuals. To conclude that the bank may come into the open market and purchase goods at a price less than other buyers merely by insisting that the amount of a nondiscriminatory tax imposed upon sellers should first be deducted therefrom, is to accord to federal instrumentalities some favor or grace which is not necessarily within the contemplation of the principle of immunity here asserted. It cannot be said that the principle embraces the inherent right in either government to come into the open market and purchase goods at a lower price than paid by other consumers by clipping therefrom the equivalent of nondiscriminatory taxes validly imposed on the seller by the other government,

Honorable George H. Sheppard, page 15

and consequently reduce that government's
revenues to a proportionate extent. This
view is in harmony with the cases herein-
above cited which recognize and define the
inherent limitations of the doctrine of
immunity, and follows the pronouncements
of the Supreme Court of the United States
in its more recent decisions formulating its con-
clusions on the applicability of the principle
and its limitations in relation to other taxing
statutes.  James v. Dravo Contracting Co., 302
U. S. 134, 58 S. Ct. 208, 211, 82 L. Ed. 155,
114 A. L. R. 318, followed in Silas Mason Co.,
Inc., v. Tax Commission of Washington, 302 U. S.
186, 58 S. Ct. 233, 82 L. Ed. 187, and Atkinson
v. State Tax Commission of Oregon, 393 U. S. 20,
58 S. Ct. 419, 82 L. Ed. 321, Jan. 31, 1938.

"We are aware that statements which might
be said to support a contrary conclusion have
been made in the cases of Panhandle Oil Co. v.
Mississippi ex rel. Knox, 277 U. S. 218, 48
S. Ct. 451, 72 L. Ed. 857, 56 A. L. R. 583,
Indian Motocycle Co. v. United States, 283 U. S.
570, 51 S. Ct. 601, 75 L. Ed. 1277, and Graves
v. Texas Co., 298 U. S. 393, 56 S. Ct. 818, 80
L. Ed. 1236. Those cases involved, respectively,
a law of Mississippi imposing an excise tax of
one cent per gallon upon the sale of gasoline,
a statute of Massachusetts levying an excise
tax on sales and a gasoline tax act of Alabama.

"In the case of James v. Dravo Contracting
Company, supra, the court had before it for con-
sideration the Gross Sales and Income Tax Law of
West Virginia, Code W. Va. 1931, 11-13-1 et seq.,
as amended Acts 1933, 1st Ex. Sess., c. 33, which
provided for annual privilege taxes on account of
'business and other activities.' That law imposed
upon the contracting company a tax equal to 2 per
cent. of the gross income from its business. The

Honorable George N. Sheppard, page 16

imposition of the tax on income derived from
a contract with the federal government, exe-
cuted to further the construction of certain
dams, raised the question whether the tax laid
a direct burden upon the federal government.
The holding was that the tax was not one on the
government, its property, or officers, nor was
it upon an instrumentality of the government,
or upon the contract. The court reiterated and
redefined the limitations of the principle of
immunity as stated in its former decisions.
Although it said, 'The application of the prin-
ciple which denies validity to such a tax has
required the observing of close distinctions
in order to maintain the essential freedom of
government in performing its functions, without
unduly limiting the taxing power which is equally
essential to both nation and state under our dual
system,' it applied, as compelling a conclusion
that the tax was valid, the limitation on the
principle of immunity stated in Willcuts v. Bunn,
supra, and hereinabove quoted. In the Bravo Case
the court also said: 'But if it be assumed that the
gross receipts tax may increase the cost to the
government, that fact would not invalidate the tax.
With respect to that effect, a tax on the contractor's
property and equipment necessarily used in the per-
formance of the contract. Concededly, such a tax
may validly be laid. Property taxes are naturally,
as in this case, reckoned as a part of the expense
of doing the work.' The court concluded that the
tax provided by the West Virginia statute did not
interfere in any substantial way with the performance
of federal functions, and was a valid exaction. It
expressly declined to consider whether the same
result would follow from the application of the
principles stated if commodities or goods were fur-
nished rather than services. It refused expressly
to overrule the cases of Panhandle Oil Co. v. Miss-
issippi ex rel. Knox, Indian Motocycle Co. v. United
States, and Graves v. Texas Co., supra, but noted that
in those cases the taxes were held to be invalid be-
cause laid on the sales to the respective governments,

Honorable George H. Sheppard, page 17

and further that theretofore those cases
had been distinguished and must be deemed
limited to their particular facts. Notwith-
standing the holdings or expressions in the
cases distinguished, it must here be concluded
that a proper construction of the Retail Sales
Tax Act of California is that the tax is not on
the sale, but rather that it is a tax in the same
category as property and excise taxes payable by
an independent contractor engaged in the business
of retail sales which, although they are reflected
in the higher cost of the product or commodity
offered, must be considered merely as a necessary
expense of conducting the business. It is a tax
computed on the gross receipts from the conduct
of the business of the retail merchant. Essen-
tially, as intimated in Metcalf & Eddy v. Mitchell,
supra, there does not appear to be any sound basis for
a distinction because the receipts affording the
measure of the tax are derived from the retail
business conducted by an independent contractor
or merchant, rather than from the sale of services,
where otherwise the imposition is nondiscriminatory.
Clearly the imposition of a privilege tax on the
retailer of commodities does not interfere with the
power of the government to borrow money; nor does it
affect in any substantial manner the efficiency of
its agency in the performance of its duties, nor
the ability of the persons taxed to discharge their
contractual obligations to the government, nor the
ability of the government to procure the services
of private individuals to aid them in their under-
takings.

"Following the path pointed by the court in
the Dravo Case, we conclude that the tax on the
retailer under the Retail Sales Tax Act of this
state imposed on the basis of a return which in-
cludes receipts derived from sales of tangible
personal property to the bank, a federal instru-
mentality, does not unduly burden the federal
government nor interfere with the exercise of the
governmental functions delegated to its instrumen-
tality, and was therefore validly imposed."

Honorable George M. Sheppard, page 18

We are not unmindful of the holding in Federal Land Bank v. Bismark Lumber Co. (1941) 314 U. S. 95, 86 L. Ed. 65, 62 S. Ct. 1. The North Dakota tax of two per cent upon the gross receipts from all sales of tangible personal property was, by statute, to be added by the retailer to the sales price and, when so added, to constitute a part of such price and to be a debt from the consumer or user to the retailer, who was forbidden to assume or absorb it. The Supreme Court of the United States held the North Dakota tax invalid as applied to lumber and other building materials purchased by the Federal Land Bank to effect necessary repairs and improvements to buildings and fences on farm properties acquired by it through mortgage foreclosure in the course of its operations. But the Court pointed out that the statute made the purchaser liable for the tax. In Western Lithograph Co. v. State Board of Equalization, supra, the Supreme Court of California acknowledged that if the tax were a tax on the consumer or purchaser of the goods sold, it would be invalid when applied to sales to a national bank. But the tax here in question is upon the retailer, not the purchaser, so we submit that the Bismark case, supra, is not in point.

In Alabama v. King & Boozer, 314 U. S. 1, 86 L. Ed. 3, 62 S. Ct. 43, 140 A. L. R. 615, Chief Justice Stone said:

"The asserted right of the one (government) to be free of taxation by the other does not spell immunity from paying the added cost attributable to the taxation of those who furnish supplies to the government and who have been granted no tax immunity. So far as a different view has prevailed, see Panhandle Oil Co. v. Mississippi and Graves v. Texas Co., supra, we think it no longer tenable."

Alabama v. King & Boozer, supra, involved an Alabama tax of 2 per cent on the gross retail sales price of tangible personal property, laid on the seller as the "taxpayer," but required to be added to the sales price and collected by him from the purchaser. The Court held that such tax did not infringe any constitutional immunity of the United States from State taxation, "when imposed with respect to lumber sold on the order of 'cost-plus-a-fixed-fee' contractors, for use by the latter in constructing an army camp for the United States, where the United States was

Honorable George H. Sheppard, page 19


not in fact the 'purchaser' within the meaning of the tax statute." See 140 A. L. R. 621 for an excellent annotation.

In view of the above authority, we are of the opinion that you correctly advised Joske Bros. Co. that it was liable for the tax. We are further of the opinion that the Comptroller General's decision is not applicable to the facts involved in your opinion request.

Trusting that the above fully answers your letter, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By Thos. B. Duggan
Assistant

TBD:fc

APPROVED MAY 7, 1943

ATTORNEY GENERAL OF TEXAS

APPROVED
OPINION
COMMITTEE
BY CHAIRMAN