

# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**JOHN BEN SHEPPERD**
ATTORNEY GENERAL

August 10, 1955

O-2954; O. 5256, in so far as they conflict

Hon. William J. Murray, Jr.,
Chairman
Railroad Commission of Texas
Tribune Building
Austin, Texas

Opinion No. S-165

Re: Application of Railroad Commission's transportation rates to the intrastate shipment of goods for the military branches of the United States.

Dear Mr. Murray:

Your request for a review of the applicability of the Railroad Commission's rates to intrastate shipment of goods for the United States is quoted, in part, as follows:

"Upon request from the Railroad Commission of Texas, the Attorney General of Texas issued three opinions relating to the matter of regulated carriers transporting shipments of freight for the United States Government, or its military in particular, intrastate in Texas, at rates different from the rates prescribed by the Railroad Commission of Texas, or as might be approved by the Commission. These Opinions were dated April 13, 1938 (without number); December 18, 1940 (Opinion No. 0-2954) and May 10, 1943 (Opinion No. 0-5256). One copy each of these Opinions is enclosed herewith for your ready reference."

This office is of the opinion that the Commission's transportation rates are applicable to the intrastate shipment of goods for the United States (military) when the movement is conducted by independent contractors. The authorities relied upon by the former opinions of this office have been distinguished or overruled by subsequent cases; therefore, such opinions are overruled insofar as they conflict with this opinion.

The regulation of transportation rates by the states is a valid and necessary function to preserve and protect the public interest. Stephenson v. Binford, 287 U.S. 251 (1932); Steele v. General Mills, 329 U. S. 433 (1947).

State regulation may not directly interfere with the function of governmental operations through its officers and agencies. Johnson v. Maryland, 254 U. S. 51 (1920); Louwein v. Moody, 12 S. W. 2d 989 (Com.

App. 1929). However, independent contractors rendering services to the government are not such agencies conducting governmental functions, and the mere fact non-discriminatory regulation of the contractor indirectly increases the burden upon the government no longer brings such contractors within any implied immunity from state regulation. Penn Dairies vs. Milk Control Commission, 318 U. S. 261 (1943); Alabama v. King & Boozer, 314 U. S. 1 (1941); Baltimore & Annapolis R. Co. v. Lichtenberg, 176 Md. 383, 4 A. 2d 734 (1939).

In the Penn Dairies case, the Supreme Court upheld a Pennsylvania milk price fixing law as applied to the sale of milk to the United States. The court distinguished agencies performing governmental functions, such as the mail carrier in the Louvein case, from the acts of independent contractors by stating on page 269, as follows:

"We may assume also that, in the absence of Congressional consent, there is an implied constitutional immunity of the national government from state taxation and from state regulation of the performance by federal officers and agencies, of governmental functions. Ohio v. Thomas, 173 U. S. 276; Johnson v. Maryland, 254 U. S. 51; Hunt v. United States, 278 U. S. 96; Arizona v. California, 283 U. S. 423. But those who contract to furnish supplies or render services to the government are not such agencies and do not perform governmental functions, Metcalf & Eddy v. Mitchell, 269 U. S. 514, 524-5; James v. Dravo Contracting Co., 302 U. S. 134, 149; Buckstaff Co. v. McKinley, 308 U. S. 358, 362-63 and cases cited; cf. Susquehanna Co. v. Tax Comm'n., 283 U. S. 291, 294; Helvering v. Mountain Producers Corp., 303 U. S. 376, 385-86; and the mere fact that non-discriminatory taxation or regulation of the contractor imposes an increased economic burden on the government is no longer regarded as bringing the contractor within any implied immunity of the government from state taxation or regulation. Alabama v. King & Boozer, 314 U. S. 1, 9, and cases cited; Baltimore & Annapolis R. Co. v. Lichtenberg, 176 Md. 383, 4 A. 2d 734, s. c., United States v. Baltimore & Annapolis R. Co. 308 U. S. 525."

The Supreme Court also held that State rate regulation was not inconsistent with the Acts of Congress requiring competitive bidding, saying, in part, at page 275, as follows:

". . .An unexpressed purpose of Congress to set aside statutes of the states regulating their internal affairs is not lightly to be inferred and ought not to be implied where the legislative command, read in the light of its history, remains ambiguous. Considerations which lead us not to favor repeal of statutes by implication, United States v. Borden Co., 308 U. S. 188,

198-9; United States v. Jackson, 302 U. S. 628, 631; Posadas v. National City Bank, 296, U. S. 497, 503-5, should be at least as persuasive when the question is one of the nullification of state power by Congressional legislation.

"Hence, in the absence of some evidence of an inflexible Congressional policy requiring government contracts to be awarded on the lowest bid despite noncompliance with state regulations otherwise applicable, we cannot say that the Pennsylvania milk regulation conflicts with Congressional legislation or policy and must be set aside merely because it increases the price of milk to the government. It would be no more than speculation for us to say that Congress would consider the government's pecuniary interest as a purchaser of milk more important than the interest asserted by Pennsylvania in the stabilization of her milk supply through control of price. Courts should guard against resolving these competing considerations of policy by imputing to Congress a decision which quite clearly it has not undertaken to make. Furthermore, we should be slow to strike down legislation which the state concededly had power to enact, because of its asserted burden on the federal government. For the state is powerless to remove the ill effects of our decision, while the national government, which has the ultimate power, remains free to remove the burden."

Further, the Supreme Court in the Penn Dairies opinion reasoned that Panhandle Oil Company v. Knox, 277 U. S. 218 (1928), and like cases, had been overruled by Alabama v. King & Boozer, supra.

In Pacific Coast Dairies v. Department, 318 U. S. 285 (1943), decided on the same day as the Penn Dairies case, the Supreme Court held that a California milk price regulation was not applicable to the sale of milk contracted and concummated within a Federal enclave. The court reasoned that Congress had exclusive power over Federal enclaves by reason of Clause 17, Section 8 of Article I of the Constitution of the United States. The facts of that case are not controlling here because the contracts with the government contemplate the movement of goods wholly upon the highways of Texas, except, in a few instances, where there is a nominal entry in or departure from a Federal enclave by the carrier.

In Hughes Transportation Co. v. United States, 121 Fed. Sup. 212 (1954), a Kentucky rate regulation was held applicable to the movement of goods for the Department of the Army by an independent contractor. The Court of Claims has remanded the case for further findings of fact relegated to the proper determination and interpretation of the Kentucky

laws. This is the latest expression of the law by a Federal court.

## SUMMARY

The intrastate shipment of goods by an independent contractor for the military branches of the United States is subject to the rate regulation of the Railroad Commission. The authorities relied upon by the former opinions of this office have been distinguished or overruled by subsequent cases; therefore, such opinions are overruled insofar as they conflict with this opinion.

APPROVED:

J. A. Amis, Jr.
Reviewer

Davis Grant
Reviewer

Will D. Davis
Reviewer

Robert S. Trotti
First Assistant

John Ben Shepperd
Attorney General

Yours very truly,

JOHN BEN SHEPPERD
Attorney General of Texas

By William W. Guild
William W. Guild
Assistant Attorney General